No. 97,221

In the Matter of STANLEY L. WILES, *Respondent*.

(150 P.3d 859)

Opinion filed February 2, 2007.

*Alexander M. Walczak*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was with him on the formal complaint for the petitioner.

*John J. Ambrosio*, of John J. Ambrosio, Chartered, of Topeka, argued the cause for respondent, and *Stanley L. Wiles*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Stanley L. Wiles, of Kansas City, Missouri, an attorney admitted to the practice of law in Kansas. The formal complaint filed against the respondent alleged violations of Kansas Rules of Professional Conduct (KRPC) including KRPC 1.4(a) (2006 Kan. Ct. R. Annot. 386) (communication), KRPC 1.15(a) (2006 Kan. Ct. R. Annot. 435) (safekeeping property), KRPC 3.2 (2006 Kan. Ct. R. Annot. 462) (expediting litigation), KRPC 3.4(d) (2006 Kan. Ct. R. Annot. 472) (fairness to opposing party and counsel), and KRPC 8.4(c) and (d) (2006 Kan. Ct. R. Annot. 510) (misconduct).

A hearing was held before a panel of the Kansas Board for Discipline of Attorneys. The panel made the following findings of fact and conclusions of law together with its recommendations to this court:

### "FINDINGS OF FACT

"The Hearing Panel finds the following facts, by clear and convincing evidence:

"1. Stanley L. Wiles (hereinafter 'the Respondent') is an attorney at law, Kansas Attorney Registration No. 12266. His last registration address with the Clerk of the Appellate Courts of Kansas is . . . Kansas City, Missouri. . . . The Kansas Supreme Court admitted the Respondent to the practice of law in the state of Kansas on February 26, 1985. Additionally, the Missouri Supreme Court admitted the Respondent to the practice of law in the state of Missouri on April 26, 1969.

"DA8866

"2. From the time he first start[ed] practicing law in 1969, and continuing until October 2002, the Respondent did not have a client trust account. In October 2002, the Respondent first opened a trust account.

"3. On April 8, 2003, the balance of the Respondent's client trust account was insufficient to cover the checks, withdrawals, deductions, and charges presented for payment. Specifically, at the beginning of the day on April 8, 2003, the Respondent had $8,451.66 in his client trust account. During that banking day, two checks were presented for payment. Check number 1333 in the amount of $9,050.30 was presented to the bank. Additionally, check number 1337 in the amount of $171.00 was presented to the bank. Even though there were insufficient funds in the account to cover the checks, the bank paid the checks. After the bank fees were assessed, the Respondent's client trust account had a negative balance of $556.29.

"4. Thereafter, US Bank forwarded a notice of insufficient funds regarding the Respondent's client's trust account to the Office of the Disciplinary Administrator. The Disciplinary Administrator docketed the notice as a complaint. On April 17, 2003, the Disciplinary Administrator forwarded the notice to the Respondent and requested that the Respondent provide a written response to the complaint. Disciplinary Administrator's Exhibit 1.

"5. On April 22, 2003, the Respondent wrote to Stanton Hazlett to explain the first incident of insufficient funds. The Respondent explained:

'I went to U.S. Bank earlier and checked on my account status. I was informed that I had an extra $600.00, above what I had noted in my checkbook as being in my account. I assumed that I had an extra $600.00 in my account, that I had not accounted for in my account. That is the sole reason why this account was overdrawn. Once I discovered the Bank made a mistake, I promptly deposited over $516.20, leaving my bank account with a positive balance.'

"6. On April 10, 2003, the Respondent deposited a check in the amount of $4,790.00, bringing the account balance to $4,233.71. In the following day, checks, withdrawals, deductions, or charges in the total amount of $1,339.49 were presented to the bank.

"7. On April 15, 2003, the check the Respondent deposited, in the amount of $4,790.00, was returned. After the bank fee was assessed, the Respondent's client's trust account had a negative balance in the amount of $1,549.22.

"8. Again, US Bank forwarded a notice of insufficient funds regarding the Respondent's client's trust account to the Office of the Disciplinary Administrator. The Disciplinary Administrator docketed the notice as a complaint. On April 24, 2003, the Disciplinary Administrator forwarded the notice to the Respondent and informed him that the notice would be investigated.

"9. On April 17, 2003, the Respondent deposited $1,800.00 to cover the deficiency.

"10.    On April 29, 2003, the Respondent wrote to Mr. Hazlett to explain the second incident of insufficient funds. The Respondent explained:

'I settled a case on behalf of a client of mine with Progressive Insurance Company for $4,790.00. Unfortunately, I did not endorse the settlement check. When Progressive Insurance Company got the check back, Progressive Insurance sent the check back to US Bank. This settlement check went back to Minneapolis and came back to US Bank here in Kansas City, Missouri.

'When I was notified by US Bank that the check came back, I went to U.S. Bank, endorsed the settlement check, and redeposited the settlement check in my IOLTA Account.'

"11.    On May 5, 2003, Robert R. Straub, Investigator/Examiner for the Disciplinary Administrator's office wrote to the Respondent, informed the Respondent that he would be conducting an audit on the Respondent's client trust account, and requested various documents.

"12.    On June 5, 2003, the Respondent provided Mr. Straub with some records. However, the records were not complete. Mr. Straub conducted an audit and noted several deficiencies. First, the Respondent failed to provide a complete set of bank statements. The Respondent did not provide all of the deposit slips. Finally, the Respondent failed to provide all of the check stubs.

"13.    Thereafter, on June 25, 2003, Mr. Straub again wrote to the Respondent. Mr. Straub informed the Respondent that he failed to provide complete records. Mr. Straub enclosed an investigative subpoena, requiring the production of the following records:

'The Stanley L. Wiles Trust Account IOLTA account #1-455-9001-5346 starting with the date that the account was opened (September 2002) including all monthly Bank Statements, cancelled checks (front and back of cancelled checks), individual client ledgers (reflecting all receipts and disbursements), and check register (or check stubs) through current date.'

"14.    On July 11, 2003, the Respondent wrote to Mr. Straub. The Respondent assured Mr. Straub that he would comply with the subpoena by delivering the requested documents on July 25, 2003.

"15.    On July 25, 2003, the Respondent delivered various documents in response to the subpoena. In his cover letter, the Respondent stated that he had enclosed all the checks, checks stubs, and monthly bank statements that he had in his possession.

"16.    However, the Respondent did not enclose all of the documents described in the subpoena. The Respondent provided bank statements for only five of the nine months he had had his client trust account. The Respondent failed to provide copies of any deposit slips. The bank statements did not identify the source of the funds deposited. Additionally, the Respondent failed to provide 32 checks that had cleared the account. Further, the records provided by the Respondent established that he paid his secretary from his client trust account. Finally, the records provided by the Respondent also established that he withdrew cash from his client

trust account on numerous occasions. The Respondent failed to maintain adequate records to track the cash withdrawals.

"17.  On August 12, 2003, Mr. Straub again wrote to the Respondent and again stated that he did not provide complete records. Additionally, Mr. Straub advised the Respondent of the many deficiencies with his client trust account. Mr. Straub went on to explain to the Respondent what he needed to do to be in compliance with KRPC 1.15. Mr. Straub provided the Respondent with a copy of 'Money of Others' published by the Kansas Bar Foundation. Finally, Mr. Straub informed the Respondent that he would return for another audit in 120 days.

"18.  In January, 2004, Mr. Straub contacted the Respondent to conduct a follow-up audit. The Respondent informed Mr. Straub that he could not provide the recent client trust account records, because he had provided them to the Missouri disciplinary authorities.

"19.  Mr. Straub had been in contact with the Missouri disciplinary authorities regarding the Respondent. The Missouri disciplinary authorities informed Mr. Straub that they did not have any recent client trust account records. Mr. Straub called the Respondent back to discuss this matter with him. The Respondent informed Mr. Straub that he was doing nothing different and that he had not made any changes in accordance with Mr. Straub's recommendations and the 'Money of Others' pamphlet. Mr. Straub determined that a follow-up audit would not serve any purpose and concluded his investigation.

"DA9402

"20.  On December 17, 2001, the Respondent filed a personal injury suit in behalf of his client, Jody Lawson, against Conopco, d/b/a Unilever Cosmetics International, also known as Calvin Klein Cosmetics, for the alleged flare up from a candle. On December 16, 2002, the Respondent voluntarily dismissed the suit following discovery disputes with opposing counsel. On June 3, 2003, the Respondent refiled the suit. Judge James Smith was presiding.

"21.  After refiling the suit, the defendant made discovery requests. The Respondent failed to comply with the discovery requests. As a result, opposing counsel forwarded a 'Golden Rule' letter to the Respondent. The Respondent failed to respond to the discovery requests. Opposing counsel filed a motion to compel. Approximately a week prior to the hearing on the motion to compel, the Respondent called opposing counsel and stated that he had the responses in hand. Opposing counsel agreed to cancel the hearing as soon as the responses were received.

"22.  The Respondent failed to provide responses to the requests for discovery and the Respondent failed to attend the hearing on the motion to compel. The Court granted the motion to compel and provided the Respondent with 10 days to provide the responses to discovery. The Respondent did not provide the responses to the requests for discovery within the 10 days.

"23.  Thereafter, opposing counsel filed a motion, seeking sanctions for the Respondent's failure to comply with the requests for discovery. The Respondent

failed to appear at the hearing on the motion for sanctions. The Court granted the motion and ordered that the Respondent pay $400.00 in reasonable costs and attorney fees related to bringing a motion to enforce discovery.

"24. The Respondent did not comply with the Court's order. Thereafter, the defendant filed a motion to dismiss for failure to comply with court order. On May 25, 2004, the Court granted the defendant's motion to dismiss and ordered that the Respondent pay $1,500.00 in reasonable costs and attorney fees related to bringing the motion to dismiss for failure to comply with court order.

### *"Reciprocal Discipline from Missouri*
### Perrine Representation

"25. James Perrine was involved in an automobile accident on April 28, 2002, involving both personal and property damage to Mr. Perrine.

"26. Thereafter, Mr. Perrine hired the Respondent to represent him in the matter. The Respondent settled Mr. Perrine's case on December 14, 2002, for $4,504.00. The Respondent paid Mr. Perrine his share of the proceeds, retained a portion for attorney's fees, and further retained the sum of $1,756.98 to pay Mr. Perrine's medical providers. The Respondent advised Mr. Perrine that he would pay those medical providers.

"27. The Respondent failed to place the money retained from Mr. Perrine's settlement proceeds to pay medical providers in his client trust account.

"28. The medical providers were not paid until March 14, 2003. In the interim, Mr. Perrine received letters and telephone calls from creditors advising him that he had bills outstanding.

### "Guy Representation

"29. In 1998 or 1999, Ronald Guy retained the Respondent to represent him regarding injuries Mr. Guy suffered at BMG Maintenance Company. The Respondent was retained to represent Mr. Guy in both a workers' compensation case against his employer and a civil suit against the manufacturer of a chemical that Mr. Guy alleged caused his physical problems. The Respondent settled the workers' compensation case to Mr. Guy's satisfaction.

"30. On June 21, 2001, the Respondent filed a civil suit against the manufacturer in the Circuit Court of Jackson County, Missouri, in behalf of Mr. Guy. Thereafter, on December 27, 2002, the Respondent filed a notice of dismissal. The Court dismissed [the] case without prejudice on January 3, 2003.

"31. On July 9, 2003, Mr. Guy filed a complaint with the Missouri disciplinary authorities, complaining that the Respondent was not providing adequate communication regarding the status of the case. On September 4, 2003, the Respondent responded to Mr. Guy's complaint. The Respondent stated that he dismissed Mr. Guy's case because he was having difficulty in getting an expert witness to testify in Mr. Guy's behalf. The Respondent stated that he planned to refile Mr. Guy's case before the statute of limitations expired. On December 15, 2003, the Respondent refiled Mr. Guy's case.

## "Ivy Representation

"32.   In October or November, 2002, Jerry Ivy retained the Respondent to represent him in a personal injury claim that arose out of a motor vehicle accident which occurred on October 10, 2002. Mr. Ivy was treated for his injuries at Marvin's Midtown Chiropractic Clinic, LLC, 811 East Linwood Boulevard, Kansas City, Missouri 64109. Mr. Ivy's bill with Marvin's Midtown Chiropractic Clinic totaled $2,130.00.

"33.   On April 2, 2003, the Respondent settled Mr. Ivy's personal injury claim with the insurance company for $4,790.00. The Respondent asked Marvin's Midtown Chiropractic Clinic whether it would accept $750.00 as full payment for Mr. Ivy's bill. Marvin's Midtown Chiropractic Clinic rejected the Respondent's offer and informed the Respondent that it would accept $1,500.00 as a full compromise of Mr. Ivy's bill.

"34.   In the Respondent's settlement distribution with Mr. Ivy, the Respondent retained $1,500.00, in April, 2003, to pay Mr. Ivy's bill with Marvin's Midtown Chiropractic Clinic. The Respondent did not retain the $1,500.00 in his client trust account.

"35.   The Respondent did not pay the clinic with the settlement proceeds that he retained.

"36.   On October 7, 2003, the Respondent again wrote to Marvin's Midtown Chiropractic Clinic asking whether they would accept $750.00 as full settlement of Mr. Ivy's bill. Again, Marvin's Midtown Chiropractic Clinic rejected the offer and demanded that they be paid the $1,500.00 which was withheld from the settlement for the payment of Mr. Ivy's bill with Marvin's Midtown Chiropractic Clinic.

"37.   As of March 26, 2004, the Respondent sent Marvin's Midtown Chiropractic Clinic a check for $750.00. Marvin's Midtown Chiropractic Clinic rejected the Respondent's check. On April 16, 2004, a year after retaining the money, the Respondent finally paid Marvin's Midtown Chiropractic Clinic $1,500.00.

## "CONCLUSIONS OF LAW

"1.   Based upon the findings of fact, the Hearing Panel concludes as a matter of law that in DA8866 the Respondent violated KRPC 1.15(a), in DA9402 the Respondent violated KRPC 3.2, KRPC 3.4(d), and KRPC 8.4(d), and pursuant to Kan. Sup. Ct. R. 202 in the reciprocal discipline case from Missouri, the Respondent violated KRPC 1.4(a), KRPC 1.15(a), and KRPC 8.4(c).

### "DA8866

"2.   Attorneys must safeguard their clients' property. *See* KRPC 1.15(a). The Respondent failed to safeguard his clients' property by allowing his client trust account to have a negative balance. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.15(a).

"3.   KRPC 1.15(a) also requires attorneys to retain complete records of their client trust account for five years after the representation is complete. In this case,

the Respondent opened his client trust account in October 2002, during the time when the Respondent's previous disciplinary case was pending before the Court. In June 2003, Mr. Straub first requested and, eventually, subpoenaed the Respondent's trust account records. The Respondent never provided complete records to Mr. Straub. Accordingly, the Hearing Panel concludes that the Respondent's unwillingness or inability to provide appropriate records of his client trust account amounts to a violation of KRPC 1.15(a).

"4.   Finally, KRPC 1.15(a) prohibits attorneys from commingling their funds with the funds of their clients. The Hearing Panel concludes that by withdrawing cash from the client trust account and by paying his secretary directly from his client trust account, the Respondent commingled his funds with the funds of his clients in violation of KRPC 1.15(a).

### "DA9402

"5.   An attorney violates KRPC 3.2 if he fails to make reasonable efforts to expedite litigation consistent with the interests of his client. In this case, the Respondent failed to expedite Ms. Lawson's case. The Respondent dismissed the case one year after filing it. Then, after he refiled it, he failed to comply with the discovery requests, which eventually led to the dismissal of the case. Accordingly, the Hearing Panel concludes that the Respondent failed to make reasonable efforts to expedite Ms. Lawson's litigation consistent with her interest, in violation of KRPC 3.2.

"6.   Lawyers are required to be fair to the opposing party and counsel. *See* KRPC 3.4(d). Specifically, '[a] lawyer shall not . . . fail to make [a] reasonably diligent effort to comply with a legally proper discovery request by an opposing party.' In this case, the Respondent failed to provide responses to discovery as requested by Ms. Crawford and as ordered by the Court. Eventually, the Court awarded opposing counsel sanctions and dismissed the case because of the Respondent's failure to respond to discovery. As such, the Hearing Panel concludes that the Respondent violated KRPC 3.4(d).

"7.   'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). In this case, the Respondent engaged in 'conduct that is prejudicial to the administration of justice' when he failed to comply with requests for discovery, when he failed to respond to the 'Golden Rule' letter, when he failed to respond to the motion to compel, when he failed to appear in Court regarding opposing counsel's motions regarding discovery, and when he failed to respond to opposing counsel's motion to dismiss. The Court suffered actual prejudice as a result of the Respondent's failures in this regard. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(d).

### "Reciprocal Discipline Case from Missouri

"8.   Kan. Sup. Ct. R. 202 provides that '[a] final adjudication in another jurisdiction that a lawyer has been guilty of misconduct shall establish conclusively the misconduct for purposes of a disciplinary proceeding in this state.' The Missouri

Supreme Court concluded that the Respondent violated Rule 4-1.4(a), 4.1.5(b), 4.1.15(a), and 4-8.4(c).

"9. Missouri Rule 4-1.4(a), 4-1.5(b), 4-1.15(a), and 4-8.4(c), are identical to KRPC 1.4(a), KRPC 1.5(b), KRPC 1.15(a), and KRPC 8.4(c).

"10. KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the Respondent violated KRPC 1.4(a) when he failed to keep Mr. Guy reasonably informed about the status of the representation. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"11. The Missouri Supreme Court concluded that the Respondent violated Rule 4-1.5(b) by failing to retain client funds in Respondent's client trust account. Missouri Rule 4-1.5(b) relates to fees, is identical to KRPC 1.5(b), and provides, '[w]hen the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.' It appears that the Court intended to find a Rule 4-1.15(a) violation in this regard. Rule 4-1.15(a) is identical to KRPC 1.15(a) which provides:

'(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.'

Because the Respondent failed to retain Mr. Perrine's funds in a client trust account, the Hearing Panel concludes that the Respondent violated KRPC 1.15(a).

"12. Additionally, the Respondent failed to retain Mr. Ivy's funds in a client trust account. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.15(a) in this regard.

"13. Again, KRPC 1.15(a) prohibits attorneys from commingling their funds with the funds of their clients. In this case, the Respondent failed to hold the property of his clients, Mr. Perrine and Mr. Ivy, separate from his own property. As such, the Hearing Panel concludes that the Respondent violated KRPC 1.15(a) in this regard.

"14. 'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The Respondent engaged in conduct that involved dishonesty, fraud, deceit, or misrepresentation when he used monies retained from Mr. Perrine's settlement which was to be paid to Mr. Perrine's medical providers, to pay the Respondent's ongoing office expenses. Therefore, the Hearing Panel concludes that the Respondent violated KRPC 8.4(c).

"15.  Additionally, the Respondent engaged in conduct that involved dishonesty, fraud, deceit, or misrepresentation when he retained $1,500.00 which he represented he would use to pay Mr. Ivy's medical bill and instead used the funds to pay ongoing expenses of his law practice. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(c).

## "AMERICAN BAR ASSOCIATION
## STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated*. The Respondent violated his duty to his clients to provide reasonable communication. The Respondent also violated his duty to his clients to safeguard their property. Finally, the Respondent violated his duty to the public and the legal profession to maintain personal integrity.

"*Mental State*. The Respondent knowingly violated his duties.

"*Injury*. As a result of the Respondent's misconduct, the Respondent caused injury to his clients and to the legal profession.

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Prior Disciplinary Offenses. The Respondent has been previously disciplined on three occasions in Kansas and eight occasions in Missouri.

"On August 19, 1991, a Hearing Panel of the Kansas Board for Discipline of Attorneys issued a final hearing report directing the Disciplinary Administrator to informally admonish the Respondent for having violated MRPC 1.1.

"On October 27, 1997, a Hearing Panel of the Kansas Board for Discipline of Attorneys issued a final hearing report directing the Disciplinary Administrator to informally admonish the Respondent for having violated KRPC 1.8(e).

"On December 6, 2002, the Kansas Supreme Court published an order censuring the Respondent for having violated KRPC 1.1, KRPC 1.3, 1.4(a), KRPC 1.5(d), and KRPC 1.15(a).

"On November 8, 1998, the Missouri disciplinary authorities forwarded a letter of admonition to the Respondent for having violated Rule 4-1.3 and Rule 4-1.4.

"On July 21, 1999, the Missouri disciplinary authorities forwarded a second letter of admonition to the Respondent for having violated Rule 4-1.3, Rule 4-1.4, and Rule 4-8.4(d).

"On June 5, 2000, the Missouri disciplinary authorities forwarded a third letter of admonition to the Respondent for having violated Rule 4-1.3 and Rule 4.1-4.

"On November 2, 2000, the Missouri disciplinary authorities forwarded a fourth letter of admonition to the Respondent for having violated Rule 4-1.4.

"On November 2, 2000, the Missouri disciplinary authorities also forwarded a fifth letter of admonition to the Respondent for having violated Rule 4-1.3 and Rule 4-1.4.

"On August 3, 2001, the Missouri disciplinary authorities forwarded a sixth letter of admonition to the Respondent for having violated Rule 4-1.15(b).

"As a reciprocal discipline case to the censure issued by the Kansas Supreme Court, on June 17, 2003, the Missouri Supreme Court indefinitely suspended the Respondent's license to practice law. However, the Court suspended the imposition of the suspension and placed the Respondent on probation.

"Thereafter, the Missouri Supreme Court found that the Respondent violated the terms and conditions of his probation. As a result, the Court extended the period of probation.

"On February 7, 2005, a Missouri Disciplinary Hearing Panel concluded that the Respondent violated Rule 4-1.4, Rule 4-1.5(b), Rule 4-1.15(a), and Rule 4-8.4(c), as detailed in paragraphs 23 through 35 in the Findings of Fact and paragraphs 8 through 15 in the Conclusions of Law above. The Missouri Disciplinary Hearing Panel recommended that the Respondent be disbarred. The Missouri Supreme Court declined to disbar the Respondent. Rather, on September 20, 2005, the Court suspended the Respondent from the practice of law in the state of Missouri. The Respondent may not apply for reinstatement until September 1, 2007.

"Furthermore, the Respondent has been suspended from the practice of law before the United States District Court for the Western District of Missouri. Additionally, the United States District Court for the District of Kansas issued an order of interim suspension to the Respondent.

"Dishonest or Selfish Motive. The Respondent engaged in conduct that involved dishonesty in the reciprocal discipline case from Missouri. Accordingly, the Hearing Panel concludes that a portion of the Respondent's misconduct was motivated by dishonesty.

"A Pattern of Misconduct. Included in this case are three complaints, DA8866, DA9402, and the reciprocal discipline case from Missouri. The complaints involve similar misconduct. Additionally, the Respondent has previously been disciplined on 11 occasions. Some of the previous cases have included violations of the rules violated in this case. Accordingly, the Respondent engaged in a pattern of misconduct.

"Multiple Offenses. The Respondent violated KRPC 1.4(a), KRPC 1.15(a), KRPC 3.2, KRPC 3.4(d), KRPC 8.4(c), and KRPC 8.4(d). As such, the Respondent committed multiple offenses.

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1985 and the Missouri Supreme Court admitted the Respondent to practice law in 1969. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for a period of

33 years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found no mitigating circumstances present.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.' Standard 4.12.

'Suspension is generally appropriate when:
(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.' Standard 4.42.

'Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding.' Standard 6.22.

'Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.' Standard 7.2."

## RECOMMENDATION

The Deputy Disciplinary Administrator recommended that the respondent be disbarred. The panel recommended indefinite suspension. As noted by the hearing panel, there was no evidence presented that any clients of respondent suffered financial loss as a result of his misconduct. Accordingly, based upon the findings of fact, conclusions of law, the aggravating factors, the lack of mitigating factors, and the standards listed in their final report, the panel recommended that respondent be indefinitely suspended from the practice of law in this state.

## DISCUSSION

The respondent filed no exceptions to the panel's findings and the panel's recommendation of indefinite suspension from the practice of law.

We have considered the final hearing report of the panel and the record on appeal; we adopt the findings of fact and conclusions of law, and a majority of this court agrees with the recommendations of the panel. The findings and conclusions establish by clear and convincing evidence that respondent violated KRPC 1.4(a) (2006 Kan. Ct. R. Annot. 386) (communication), KRPC 1.15(a) (2006 Kan. Ct. R. Annot. 435) (safekeeping property), KRPC 3.2 (2006 Kan. Ct. R. Annot. 462) (expediting litigation), KRPC 3.4(d) (2006 Kan. Ct. R. Annot. 472) (fairness to opposing party and counsel), and KRPC 8.4(c) and (d) (2006 Kan. Ct. R. Annot. 510) (misconduct).

The respondent reserved his right to argue in mitigation of the panel's recommended discipline. However, respondent spent most of his time before this court either defending his actions or contending that either the charges were not that serious or that most attorneys practice the same way.

The respondent's misconduct is serious. His conduct involving dishonesty and conversion of a client's property without more would normally warrant disbarment, as recommended by the Disciplinary Administrator. A majority of the court accepts the panel's recommendation of indefinite suspension as the appropriate discipline. A minority of this court would disbar respondent.

IT IS THEREFORE ORDERED that respondent, Stanley L. Wiles, be and he is hereby indefinitely suspended from the practice of law in the state of Kansas, effective on the date of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2006 Kan. Ct. R. Annot. 243).

IT IS FURTHER ORDERED that respondent shall comply with Supreme Court Rule 218 (2006 Kan. Ct. R. Annot. 314), and in the event respondent would seek reinstatement, he shall comply with Supreme Court Rule 219 (2006 Kan. Ct. R. Annot. 327).

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that the costs herein be assessed to respondent.