No. 101,413

In the Matter of STANLEY L. WILES, *Respondent*.

(210 P.3d 613)

Opinion filed July 2, 2009.

*Alexander M. Walczak*, deputy disciplinary administrator, argued the cause and was on the brief for petitioner.

*Stanley L. Wiles*, respondent, argued the cause and was on the brief pro se.

*Per Curiam*: This is an original contested proceeding in discipline filed by the office of the Disciplinary Administrator against Stanley L. Wiles of Kansas City, Missouri, an attorney admitted to the practice of law in Kansas in 1985. Wiles' Kansas license was indefinitely suspended by this court in February 2007 and remains suspended. See *In re Wiles*, 283 Kan. 173, 150 P.3d 859 (2007).

With regard to the present case, a formal complaint was filed on January 4, 2008, and, on June 24, 2008, an evidentiary hearing was held before a hearing panel of the Kansas Board for Discipline of Attorneys. After considering the testimony and other evidence presented at the hearing, the hearing panel concluded that Wiles violated four of the Kansas Rules of Professional Conduct (KRPC):

KRPC 1.4(b) (2008 Kan. Ct. R. Annot. 432) (communication); KRPC 3.4(c) (2008 Kan. Ct. R. Annot. 538) (fairness to opposing party and counsel); KRPC 5.5(a) (2008 Kan. Ct. R. Annot. 565) (unauthorized practice of law); and KRPC 8.4(g) (2008 Kan. Ct. R. Annot. 586) (misconduct).

Based on these violations and considering various aggravating and mitigating circumstances, the hearing panel unanimously recommended that Wiles be disbarred.

Before the panel and now before this court, Wiles maintains that he neither acted unethically nor engaged in the unauthorized practice of law. Before us, pursuant to Supreme Court Rule 212 (2008 Kan. Ct. R. Annot. 327), Wiles filed exceptions to the hearing panel's findings and subsequently filed a brief with this court. We

have organized the arguments raised in Wiles' brief into four issues. In the first three issues, he argues that the record does not support the panel's findings regarding each of the three informal complaints that formed the basis for the Disciplinary Administrator's action, *i.e.*, DA9874 (McKinney), DA10051 (Dorsey), and DA10206 (Dace). Finally, he argues that disbarment is inappropriate.

Before addressing the merits of the issues raised in Wiles' brief, we also note that at oral argument Wiles generally disparaged the disciplinary process, the hearing, and the hearing panel's conclusions. Related to some of these allegations, after the hearing panel issued its final report and Wiles submitted his brief to this court, Wiles filed a motion seeking discovery, including the deposition of the Disciplinary Administrator. Through the motion, Wiles attempted to discover the identity of individuals who were present during his disciplinary hearing and to determine if the Disciplinary Administrator had any communications regarding the informal complaints made against Wiles. We denied the discovery requests. At oral argument, Wiles renewed his complaint that discovery had been denied.

Regarding Wiles' request for discovery, Supreme Court Rule 216 (2008 Kan. Ct. R. Annot. 340) provides procedures for discovery in attorney discipline cases. The rule allows depositions only in limited circumstances, none of which applies in this case. See Supreme Court Rule 216(f); Internal Operating Rules of the Kansas Board for Discipline of Attorneys, Rule D.4 (2008 Kan. Ct. R. Annot. 385). Wiles failed to provide exceptional circumstances warranting the discovery deposition.

As to Wiles' other complaints about the process, Wiles failed to object to the jurisdiction or the composition of the hearing panel. In fact, he failed to raise any objection to any aspect of the panel hearing until after he filed his exceptions to the final report and his brief before this court. Supreme Court Rule 212 provides that the report and any findings or recommendations in the report are deemed admitted if timely exception is not made. Moreover, under the Internal Operating Rules of the Kansas Board for Discipline of Attorneys, Rule D.1, all questions relating to procedure or ju-

risdiction and objections to the composition of the hearing panel must be made by a motion in writing at least 10 days before the hearing. Wiles failed to do so. See *In re Seck*, 258 Kan. 530, 533-34, 905 P.2d 122 (1995) (referencing Internal Operating Rule D.1).

We note also that Wiles has not cited a meritorious due process concern. He certainly has not demonstrated prejudice as the result of his hearing being public, has not come forward with anything other than rank speculation regarding communications about the informal complaints, and otherwise has failed to show that the panel failed to properly conduct the hearing. In summary, Wiles' objections to the disciplinary process are untimely, without support, and lack merit. We, therefore, turn to his substantive arguments.

### Standard of Review

In disciplinary proceedings, this court considers the evidence, the findings of the hearing panel, and the arguments of the parties and determines whether violations of the KRPC exist and, if they do, what discipline should be imposed on the respondent. *In re McPherson*, 287 Kan. 434, 440-41,196 P.3d 921 (2008); *In re Lober*, 276 Kan. 633, 636, 78 P.3d 442 (2003). Any attorney misconduct must be established by clear and convincing evidence. *In re Nelson*, 288 Kan. 179, 183, 200 P.3d 1262 (2009); Supreme Court Rule 211(f) (2008 Kan. Ct. R. Annot. 313) (misconduct to be established by clear and convincing evidence). The touchstone of the clear and convincing standard is that the evidence must establish that the truth of the facts asserted is "highly probable." *In re B.D.-Y.*, 286 Kan. 686, Syl. ¶ 3, 187 P.3d 594 (2008). In making this determination, the appellate court does not weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact. 286 Kan. at 699.

We apply these standards to the facts and violations found by the hearing panel, which related to three informal complaints submitted to the Disciplinary Administrator by clients or opposing counsel, specifically complaints related to Wiles' representation of clients Tyrone McKinney (DA9874), Jennifer Dorsey (DA10051), and Adresie Dace (DA10206).

## DA9874—Complaint of McKinney

The final hearing report contained the following findings of fact with respect to Wiles' representation of Tyrone McKinney:

"8. On November 8, 2005, following the Missouri Supreme Court's suspension of the Respondent's license to practice law in the State of Missouri, the Respondent wrote a letter to the Kansas City Area Transport Authority ('KCATA'). The Respondent's letterhead stated, 'Licensed in Missouri and Kansas.'

"9. In the letter, the Respondent advised the KCATA that he

'. . . represents Mr. Tyrone McKinney for the purpose of settlement or litigation of Mr. McKinney's claim for personal injuries concerning a [sic] incident on one of your busses, that occurred on or about October 27, 2005 at or near 12th and Wyandotte in Kansas City, Missouri . . .

. . . .

'I understand that GAB Robins is your Insurance Company. I am forwarding a copy of this Attorney Lien Letter to your Insurance Company for further handling, although GAB Robins generally denies every claim that comes to the bus company, whether the claim is good or not.'

"10. On November 15, 2005, Douglas McMillan, Assistant City Attorney for Kansas City, Missouri, responded to the Respondent's letter. Mr. McMillan stated:

'On November 14, 2005, I confirmed with Missouri Chief Counsel's Office that on September 20, 2005, your Missouri law license was suspended until September 1, 2007.

'Mr. McKinney's claim alleged[ly] occurred on October 27, 2005 at 12th and Wyandotte, Kansas City, Jackson County, Missouri. The KCATA offices are located in Jackson County, Missouri. As such, the proper venue for bringing any action on behalf of Mr. McKinney would be in the Circuit Court of Jackson County, Missouri.

'You were suspended from the practice of law in Missouri both prior to the date of the alleged injury to your client and the date of your lien letter. As such, my clients, the KCATA and GAB Robins, will not acknowledge your purported lien.'

"11. On November 16, 2005, the Respondent wrote to Mr. McMillan. The reference line of the Respondent's letter provided, 'Julia Powell & Tyrone McKinney v. KCATA.' Again, the Respondent's letter stated that he was licensed in Missouri and Kansas. The Respondent's letter provided:

'I have in my hand another one of your stupid letters like the letter that you faxed me on the Tyrone McKinney case.

'As I told you on the telephone, I am suspended in Missouri, but I still have my Kansas Law license.

'If you, GAB Robins, and the KCATA ignore my attorneys lien letter, you will live to regret it.'

"12. On February 7, 2006, the Respondent again wrote to the KCATA and asserted an attorney lien regarding a third client's case, Kenya Thornton. Again,

the Respondent's letterhead indicated that he was licensed in Missouri and Kansas."

### Hearing Panel's Conclusions Regarding McKinney's Complaint

The focus of the hearing panel's conclusions regarding McKinney's complaint was Wiles' use of professional letterhead that portrayed him as an "Attorney At Law" who was "Licensed in Missouri and Kansas" after his Missouri law license had been suspended. In finding that Wiles violated KRPC 5.5(a) by engaging in the unauthorized practice of law, the hearing panel stated:

"[T]he fact that the Respondent used letterhead which indicated that he was licensed to practice law in the State of Missouri after his license was suspended is also evidence that [he] engaged in the unauthorized practice of law. Because the Respondent continued to practice law when his license to do so had been suspended, the Hearing Panel concludes that [he] violated KRPC 5.5(a)."

In addition, the hearing panel made the general finding that Wiles violated KRPC 8.4(g)—engaging in any other conduct that adversely reflects on the lawyer's fitness to practice law—by continuing to practice law after his license had been suspended. And the hearing panel found that Wiles violated KRPC 3.4(c) by practicing law in Missouri following the suspension of his Missouri law license. KRPC 3.4(c) provides that "[a] lawyer shall not: . . . knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." 2008 Kan. Ct. R. Annot. 538.

### Wiles' Disputes Regarding McKinney's Complaint

Wiles takes issue with the hearing panel's factual findings in paragraphs 5, 8, 11, and 12, which indicate that despite Wiles' suspension from practicing law in Missouri on September 20, 2005, he continued sending correspondence using letterhead identifying himself as a lawyer licensed to practice in Missouri. Specifically, the letterhead stated that Wiles was an "Attorney At Law" who was "Licensed in Missouri and Kansas."

Significantly, Wiles admits in his appellate brief that he used this letterhead after his Missouri law license was suspended. He merely attempts to minimize his culpability by arguing that his use of the misleading letterhead was "inadvertent," that the wording was in

"small type," and that he "immediately" altered the letterhead to omit the word "Missouri" when the problem was brought to his attention by Douglas McMillan, Assistant County Attorney for Kansas City, Missouri.

Instead of accepting responsibility for his actions, Wiles appears to blame others for failing to notify him of the misleading language on his letterhead. He complains "it was not until March 8, 2006, that Mr. McMillan disclosed to anyone that [I] had on [my] letterhead" the Missouri law license designation. It was in March 2006 that McMillan specifically mentioned Wiles' use of an inaccurate letterhead to the Kansas Deputy Disciplinary Administrator. Previously, however, via letters to the Deputy Disciplinary Administrator and to Wiles, McMillan had generally questioned Wiles' authority to practice law in Missouri in November 2005. McMillan originally questioned Wiles' authority to practice law when Wiles sent a letter to McMillan's Missouri client, KCATA, regarding Wiles' purported attorney liens in a *Missouri* personal injury case which began in October 2005, a date following the suspension of Wiles' license to practice law in Missouri. Regarding Wiles' representation of McKinney, Wiles was clearly practicing law in Missouri without a license and was using a letterhead that portrayed him to be a licensed Missouri lawyer.

A general definition of the "practice of law" has been quoted with approval as follows:

" 'As the term is generally understood, the "practice" of law is the doing or performing of services in a court of justice, in any matter depending therein, throughout its various stages, and in conformity to the adopted rules of procedure. But in a larger sense it includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be depending in a court.' " *State ex rel. Boynton v. Perkins,* 138 Kan. 899, 907-08, 28 P.2d 765 (1934) (quoting *Eley v. Miller,* 7 Ind. App. 529, 34 N.E. 836 [1893]).

In addition to that general definition, this court has established guidelines for what suspended and disbarred attorneys may and may not do. With regard to limitations, we have emphasized:

"[T]he better rule is that an attorney who has been disbarred or suspended from the practice of law is permitted to work as a law clerk, investigator, paralegal, or

in any capacity as a lay person for a licensed attorney-employer if the suspended lawyer's functions are limited exclusively to work of a preparatory nature under the supervision of a licensed attorney-employer and does not involve client contact. *Any contact with a client is prohibited.* Although not an inclusive list, the following restrictions apply: a suspended or disbarred lawyer may not be present during conferences with clients, talk to clients either directly or on the telephone, sign correspondence to them, or contact them either directly or indirectly." (Emphasis added.) *In re Juhnke,* 273 Kan. 162, 166, 41 P.3d 855 (2002) (quoting *In re Wilkinson,* 251 Kan. 546, 553-54, 834 P.2d 1356 [1992]).

Wiles did not follow these restrictive limitations. He worked alone, unsupervised, and continued to represent McKinney in a Missouri case and to hold himself out as a licensed Missouri attorney on his professional letterhead.

### *Conclusions Regarding McKinney's Complaint*

Although Wiles' admissions in his brief seem to settle the question, a review of the record also leads to the conclusion that there is clear and convincing evidence to support the hearing panel's findings that Wiles violated KRPC 5.5(a) (2008 Kan. Ct. R. Annot. 565) (unauthorized practice of law), KRPC 3.4(c) (2008 Kan. Ct. R. Annot. 538) (fairness to opposing party and counsel), and KRPC 8.4(g) (2008 Kan. Ct. R. Annot. 586) (misconduct) in representing McKinney.

### DA10051—Complaint of Dorsey

The final hearing report contained the following findings of fact with respect to Wiles' representation of Jennifer Dorsey:

"13.   On October 13, 2005, Jennifer Dorsey met the Respondent at his law office in Kansas City, Missouri, and retained the Respondent to provide representation regarding four potential claims. At that time, the Respondent's office was marked with a sign that indicated that the Respondent was an Attorney-at-Law.

"14.   The potential claims included (1) a claim involving an accident with U-Haul, (2) a claim involving allegations of the presence of mold in her former apartment, (3) a claim involving prescription medication, and (4) a malpractice claim involving her son, Damian. The Respondent and Ms. Dorsey executed contingency fee agreements regarding each of the four potential claims.

"15.   Despite the fact that the potential mold claim arose in Missouri and would have to have been brought in a Missouri court, the Respondent never informed Ms. Dorsey that his license to practice law in the State of Missouri was

suspended. Accordingly, the Respondent provided Ms. Dorsey with legal advice in Missouri regarding a Missouri law matter.

"16. Ms. Dorsey was ordered to appear in court on a matter related to the mold claim. Ms. Dorsey informed the Respondent of the court appearance. The Respondent instructed Ms. Dorsey to appear as ordered, however, he indicated that he would not accompany her. The Respondent failed to explain that he could not appear in court with her due to the suspension of his license.

"17. While the other three cases could have been brought in Kansas, the Respondent physically engaged in the practice of law in Missouri regarding these three matters.

"18. Prior to July 19, 2006, Ms. Dorsey learned that the Respondent's license to practice law in the State of Missouri had been suspended. After learning that the Respondent was not a licensed Missouri attorney, Ms. Dorsey terminated the Respondent's representation. Thereafter, Ms. Dorsey retained C. David Whipple's law firm.

"19. After the Respondent learned that his representation had been terminated, on July 19, 2006, the Respondent wrote to Ms. Dorsey. In the letter, the Respondent stated:

'Needless to say I was very surprised when you sent me a notice that you were taking your cases out of my hands and giving them to Davey Whipple. I was getting ready to file your case against U-Haul, when you unilaterally contacted Davey Whipple to take over your cases.

'In this regard, you have acted irresponsibly. You have the right to act in a irresponsible manner. But I have certain rights also. I have a right to submit and prosecute to the fullest extent my attorneys lien for work that I have done on all of your cases. I will do this with vigor. . . .

. . . .

'You can tell Davey Whipple that these attorneys liens and expense liens on these cases are not negotiable.

'You have picked your bed, now you will lie in it.'

"The Respondent asserted that he was owed $57,927.97 in fees and expenses for his representation of Ms. Dorsey.

"20. On September 12, 2006, Sheila D. Verduzco, an attorney associated with Mr. Whipple, sent a letter to the Respondent requesting that the Respondent prepare an itemization of the time spent on each of Ms. Dorsey's cases. On September 14, 2006, the Respondent replied to Ms. Verduzco's letter and stated, '[P]lease send me $2,000.00 and I will be glad to provide you with this itemization.' The Respondent never provided an itemization as requested by Ms. Verduzco in behalf of Ms. Dorsey."

## Hearing Panel's Conclusions Regarding Dorsey's Complaint

The hearing panel concluded that Wiles violated KRPC 1.4(b) (2008 Kan. Ct. R. Annot. 432) (communication) when he failed to

explain to Dorsey that he could not represent her in any Missouri action, and violated KRPC 5.5(a) (2008 Kan. Ct. R. Annot. 565) (unauthorized practice of law) by engaging in the unauthorized practice of law when he met with Dorsey in Missouri and provided her with legal advice. The hearing panel stated that because Wiles still had his Kansas license to practice law, he could have advised Dorsey "in Kansas on Kansas matters" but Wiles' "contacts with Ms. Dorsey were in Missouri." The hearing panel further stated that one of Dorsey's claims—involving mold at an apartment—arose in Missouri, and therefore any action would have to have been taken in Missouri and Wiles was not authorized to do so. Also, the hearing panel made general findings that Wiles violated KRPC 3.4(c) when he practiced law in Missouri after his license to practice law had been suspended and violated KRPC 8.4(g) because continuing to practice law after his license to do so had been suspended adversely reflected on Wiles' fitness to practice law.

## Wiles' Disputes Regarding Dorsey's Complaint

Wiles takes issue with the hearing panel's findings in paragraphs 13, 14, 15, 16, 17, and 20 of the final hearing report. Wiles emphasizes that at the time he met with Dorsey in his Missouri law office, he was still licensed to practice law in Kansas and that all four of Dorsey's potential claims "could" have been filed in Kansas. He further disputes the implication of the hearing panel's findings which suggest that someone licensed to practice law in Kansas must be physically in Kansas when advising a client about Kansas law.

Despite his argument, at least one of the claims—the one relating to mold in her family's apartment—arose in and was filed in Missouri. Even though Wiles argues that the defendant in the case lived in Kansas at the time of the incident and could have been sued in Kansas and that Dorsey later moved to Kansas, which might have given Kansas jurisdiction over the claim, the action related to a Missouri residence owned by Scomik Properties, L.L.C., incorporated in Missouri with its registered agent in Missouri. Documents in the record show that action was taken against Scomik Properties in Missouri and that Dorsey was ordered to appear in the case. Despite the case's Missouri status, Wiles never informed

Dorsey that his license to practice law was suspended in Missouri and that he was unable to appear before a Missouri court on her behalf. Instead, when Dorsey received the order to appear in a Missouri court in the mold case, Wiles told Dorsey that he "would not" accompany her. He argues that he was not obligated to disclose to Dorsey that he "could not" go to court due to his suspended Missouri law license.

Dorsey gave the following testimony at the disciplinary hearing:

"Q. Okay. And did you discuss that [subpoena] with Mr. Wiles?
"A. Yes.
"Q. Okay. Did you ask Mr. Wiles . . . what should you do?
"A. Yes.
"Q. What did he tell you?
"A. He told me I better go to court.
"Q. Okay.
"A. And I said, well aren't you going to go and he said no, go see what they say."

Thus, Wiles, having no license to practice law in Missouri, gave legal advice in a Missouri case and then sent his client to court without legal representation. Wiles states in his appellate brief that he would have provided Dorsey with a Missouri attorney if "Dorsey had requested" one. Yet Dorsey clearly sought legal representation and legal advice in all four cases, including her Missouri case, when she initially met with Wiles and entered into contingency fee agreements with him. KRPC 1.4(b) provides that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." 2008 Kan. Ct. R. Annot. 432.

Wiles also takes exception to the hearing panel's finding that he never provided Dorsey's new attorney with an itemization of his time spent on each of Dorsey's cases. Shortly after Dorsey discovered that Wiles' law license was suspended in Missouri, she fired him and retained Sheila Verduzco of the Kansas City, Missouri, Whipple Law Firm. Then, on July 19, 2006, Wiles wrote a letter to Dorsey in which he demanded payment for $57,600 in legal services. In September 2006, Verduzco, after seeking guidance from the Missouri Office of Chief Disciplinary Counsel, wrote a

letter to Wiles in which she requested an "itemization of time you spent [on] each of M[s]. Dorsey's cases."

What Wiles ultimately provided to Verduzco on January 22, 2008, was a handwritten log of time spent on the Kansas U-Haul case. At the disciplinary hearing, when Wiles was asked how he arrived at his handwritten entries in the U-Haul case, he testified that he did not keep any time sheets and that he did not prepare the handwritten log until approximately 16 months after Verduzco's request for itemized time spent on Dorsey's cases. In his appellate brief, Wiles emphasizes that he submitted an itemized log on the U-Haul case, but he does not mention Dorsey's other three cases and there is no mention in the record of any itemized billing in those cases.

Wiles also denies the accuracy of the panel's findings in paragraphs 13 and 14 relating to Dorsey's personal injury suit against U-Haul at the time she initially visited his law office on October 13, 2005. The reasoning behind Wiles' U-Haul argument is unclear. Regardless, the record supports the hearing panel's findings and shows that on October 13, 2005, Wiles and Dorsey entered into a "Contingency Agreement of Employment of Attorney-At-Law," and it concerned the actions of "U-Haul and all others liable."

### *Conclusions Regarding Dorsey's Complaint*

A review of the record leads to the conclusion that there is clear and convincing evidence to support the hearing panel's findings that Wiles violated KRPC 1.4(b) (communication), KRPC 5.5(a) (unauthorized practice of law), KRPC 3.4(c) (fairness to opposing party and counsel), and KRPC 8.4(g) (misconduct) with regard to Dorsey's complaint.

### **DA10206—Complaint Related to Dace**

The final hearing report contained the following findings of fact with respect to Wiles' representation of Adresie Dace:

"21.    Following the Kansas Supreme Court's suspension of the Respondent's license to practice law in Kansas, Adresie Dace retained the Respondent to assist her in recovering $15,000.00 she paid for taxes on the proceeds from a settlement of a Kansas case. The Respondent and Ms. Dace entered into a contingency fee

agreement. According to the agreement, the Respondent would be entitled to 40% of any recovery as a paralegal.

"22. Despite the Respondent's contentions otherwise, the Respondent provided Ms. Dace with legal advice.

"23. On April 26, 2007, the Respondent sent J. Nick Badgerow and Jeannie M. DeVeney a letter titled, Notice of Paralegal Lien. The Respondent asserted that Ms. Dace was entitled to approximately $15,000.00 for taxes she had to pay on a settlement against Thorn America, Ms. DeVeney's client. The Respondent's letter stated, in part:

'My paralegal fee to represent Ms. Dace is 40% of any and all paid on Ms. Dace's claim for income tax reimbursement against Thorn America and Thorn America's liability insureance [sic] carrier or insurance carriers.

. . . .

'I fully explained to Ms. Dace that I was currently suspended from practising [sic] law in Missouri at this time.

'ILf [sic] litigation is necessary, I will refer Ms. Dace to a Missouri attorney to file any necessary legal papers.'

"24. On May 21, 2007, Ms. DeVeney forwarded the Respondent's letter to the Disciplinary Administrator's office. Thereafter, on May 9, 2007, the Respondent wrote to the Disciplinary Administrator's office. In his letter, the Respondent stated:

'As you well know, I am not at this time a Kansas attorney. However, your office cannot prevent me from acting as a Paralegal. You have no authority to regulate me from practising [sic] as a paralegal.

'I have acted absolutely ethically as a paralegal. I notified Ms. Adresie Dace that I was not an attorney and could only represent her as a paralegal. I told Ms. Dace that I could not go to Court on her behalf, and that I could not file any legal papers in Court on her behalf. I notified Mr. Badgerow and Ms. DeVeney that I was suspended from Practising [sic] law in Kansas, and that I was only representing Ms. Adresie Dace as a Paralegal.' "

## Hearing Panel's Conclusions Regarding Dace's Complaint

The hearing panel concluded that Wiles violated KRPC 3.4(c) when he practiced law in Kansas after the Kansas Supreme Court suspended his license to practice law. The hearing panel also pointed out that Wiles failed to disclose to opposing counsel in Dace's tax reimbursement case that his Kansas law license was suspended. Instead, Wiles only disclosed to opposing counsel that his Missouri law license was suspended.

In addition, the hearing panel concluded that Wiles violated KRPC 5.5(a) by engaging in the unauthorized practice of law when he met with Dace after his Kansas law license was suspended and

provided legal advice to Dace regarding a Kansas matter. Again, the hearing panel also made the general finding that Wiles violated KRPC 8.4(g) by continuing to practice law after his license to do so had been suspended and that this action adversely reflected on Wiles' fitness to practice law.

### Wiles' Disputes Regarding Dace's Complaint

Wiles takes issue with the hearing panel findings in paragraph 22 of the final hearing report, arguing that he gave Dace no legal advice and that Dace merely employed Wiles as a paralegal.

There is no merit to this argument. Unsupervised, Wiles entered into a contingency fee agreement with Dace in which he agreed to assist her in recovering tax reimbursement from a settlement of a Kansas case. According to this contingency fee agreement, Wiles would be entitled to 40 percent of any recovery as a "paralegal." Contrary to the restrictive limitations laid out by this court in *In re Juhnke*, 273 Kan. 162, 166, 41 P.3d 855 (2002), and *In re Wilkinson*, 251 Kan. 546, 553-54, 834 P.2d 1356 (1992), Wiles' function in Dace's case was not "limited exclusively to work of a preparatory nature under the supervision of a licensed attorney-employer" and he did not refrain from client contact. As previously stated, this court has cautioned that under circumstances involving a suspended attorney acting as a paralegal, "[a]ny contact with a client is prohibited." 251 Kan. at 553. This includes either direct or indirect contact. 251 Kan. at 553.

### Conclusions Regarding Dace's Complaint

A review of the record leads to the conclusion that there is clear and convincing evidence to support the hearing panel's findings that Wiles violated KRPC 5.5(a) (unauthorized practice of law), KRPC 3.4(c) (fairness to opposing party and counsel), and KRPC 8.4(g) (misconduct) in his contacts with Dace.

### RECOMMENDED DISCIPLINE

Finally, we consider Wiles' arguments that the discipline of disbarment is inappropriate. The hearing panel's unanimous recommendation of disbarment was based on the following analysis:

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to the legal profession.

"*Mental State.* The Respondent knowingly and intentionally violated his duty.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused actual injury to the legal profession.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"*Prior Disciplinary Offenses.* The Respondent has been previously disciplined on four occasions in Kansas and eight occasions in Missouri.

"On August 19, 1991, a Hearing Panel of the Kansas Board for Discipline of Attorneys issued a final hearing report directing the Disciplinary Administrator to informally admonish the Respondent for having violated MRPC 1.1.

"On October 27, 1997, a Hearing Panel of the Kansas Board for Discipline of Attorneys issued a final hearing report directing the Disciplinary Administrator to informally admonish the Respondent for having violated KRPC 1.8(e).

"On December 6, 2002, the Kansas Supreme Court published an order censuring the Respondent for having violated KRPC 1.1, KRPC 1.3, KRPC 1.4(a), KRPC 1.5(d), and KRPC 1.15(a).

"On February 2, 2007, the Kansas Supreme Court indefinitely suspended the Respondent's license to practice law in the State of Kansas for having violated KRPC 1.4(a), KRPC 1.15(a), KRPC 3.2, KRPC 3.4(d), KRPC 8.4(c), and KRPC 8.4(d).

"On November 8, 1998, the Missouri disciplinary authorities forwarded a letter of admonition to the Respondent for having violated Rule 4-1.3 and Rule 4-1.4.

"On July 21, 1999, the Missouri disciplinary authorities forwarded a second letter of admonition to the Respondent for having violated Rule 4-1.3, Rule 4-1.4, and Rule 4-8.4(d).

"On June 5, 2000, the Missouri disciplinary authorities forwarded a third letter of admonition to the Respondent for having violated Rule 4-1.3 and Rule 4.1-4.

"On November 2, 2000, the Missouri disciplinary authorities forwarded a fourth letter of admonition to the Respondent for having violated Rule 4-1.4.

"On November 2, 2000, the Missouri disciplinary authorities also forwarded a fifth letter of admonition to the Respondent for having violated Rule 4-1.3 and Rule 4-1.4.

"On August 3, 2001, the Missouri disciplinary authorities forwarded a sixth letter of admonition to the Respondent for having violated Rule 4-1.15(b).

"As a reciprocal discipline case to the censure issued by the Kansas Supreme Court, on June 17, 2003, the Missouri Supreme Court indefinitely suspended the Respondent's license to practice law. However, the Court suspended the imposition of the suspension and placed the Respondent on probation.

"Thereafter, the Missouri Supreme Court found that the Respondent violated the terms and conditions of his probation. As a result, the Court extended the period of probation.

"On February 7, 2005, a Missouri Disciplinary Hearing Panel concluded that the Respondent violated Rule 4-1.4, Rule 4-1.5(b), Rule 4-1.15(a), and Rule 4-8.4(c), as detailed in paragraphs 23 through 35 in the Findings of Fact and paragraphs 8 through 15 in the Conclusions of Law above. The Missouri Disciplinary Hearing Panel recommended that the Respondent be disbarred. The Missouri Supreme Court declined to disbar the Respondent. Rather, on September 20, 2005, the Court suspended the Respondent from the practice of law in the state of Missouri. The Respondent could not have applied for reinstatement until September 1, 2007.

"Furthermore, the Respondent has been suspended from the practice of law before the United States District Court for the Western District of Missouri. Additionally, the United States District Court for the District of Kansas issued an order of interim suspension to the Respondent.

"*Dishonest or Selfish Motive.* The Respondent's motivation for continuing to practice law after his license was suspended appears to be motivated by selfishness. The Respondent sought to recover attorneys fees for practicing law while his license to do so was suspended.

"*A Pattern of Misconduct.* Included in this case are three complaints. The complaints involve similar misconduct. Additionally, the Respondent has previously been disciplined on numerous occasions. Some of the previous cases have included violations of the rules violated in this case. Accordingly, the Respondent engaged in a pattern of misconduct.

"*Multiple Offenses.* The Respondent violated KRPC 1.4(b), KRPC 3.4(c), KRPC 5.5(a), and KRPC 8.4(g). As such, the Respondent committed multiple offenses.

"*Refusal to Acknowledge Wrongful Nature of Conduct.* The Respondent refused to acknowledge the wrongful nature of his conduct.

"*Substantial Experience in the Practice of Law.* The Missouri Supreme Court admitted the Respondent to practice law in 1969 and the Kansas Supreme Court admitted the Respondent to practice law in 1985. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"*Physical Disability*. The Respondent suffers from diabetic retinopathy which greatly limits his vision.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'Disbarment is generally appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious injury to a party, or causes serious or potentially serious interference with a legal proceeding.' Standard 6.21.

'Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.' Standard 7.1.

'Disbarment is generally appropriate when a lawyer:

(a) intentionally or knowingly violates the terms of a prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession; or

(b) has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession. Standard 8.1.'

### "RECOMMENDATION

"The Deputy Disciplinary Administrator recommended that the Respondent be disbarred. The Respondent recommended that the Hearing Panel conclude that no violations occurred, thus, no discipline was warranted.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be disbarred from the practice of law in the State of Kansas."

## Conclusion Regarding Discipline

Wiles' objections to these conclusions are general and make it clear that Wiles does not appreciate the seriousness of his misconduct. Despite his prior disciplinary experience, he found no obligation to follow this court's rules, to protect the public from potential injury, or to hold the legal profession in high regard. Apparently, Wiles learned little from his prior disciplinary experiences.

Based upon this court's consideration of the entire record, the arguments of counsel, and statements of the respondent before this court, we conclude that the appropriate discipline in this case is disbarment from the practice of law in this state.

IT IS THEREFORE ORDERED that the respondent, Stanley L. Wiles, be and he is hereby disbarred from the practice of law in the state of Kansas in accordance with Supreme Court Rule 203(a)(1) (2008 Kan. Ct. R. Annot. 266) for his violations of the Kansas Rules of Professional Conduct.

IT IS FURTHER ORDERED that the Clerk of the Appellate Courts strike the name of Stanley L. Wiles from the roll of attorneys licensed to practice law in Kansas.

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that the respondent pay the costs of these proceedings.