IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 122,053

In the Matter of LAUREL R. KUPKA,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed February 28, 2020. Two-year suspension.

*Stanton A. Hazlett*, Disciplinary Administrator, argued the cause, and *Danielle M. Hall*, Deputy Disciplinary Administrator, was with him on the formal complaint for the petitioner.

*N. Trey Pettlon*, of Law Offices of Pettlon & Ginie, of Olathe, argued the cause, and *Laurel R. Kupka*, respondent, argued the cause pro se.

PER CURIAM: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Laurel R. Kupka, of Shawnee, an attorney admitted to the practice of law in Kansas in 2011.

On May 16, 2019, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent timely filed an answer to the complaint on May 30, 2019. The parties entered into a written stipulation on August 12, 2019. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on August 13, 2019, where the respondent was personally present and was represented by counsel. The hearing panel determined the respondent violated KRPC 1.1 (2019 Kan. S. Ct. R. 295) (competence); 1.3 (2019 Kan. S. Ct. R. 298) (diligence); 1.4(a) and (b) (2019 Kan. S. Ct. R. 299) (communication); 4.1(a) (2019 Kan. S. Ct. R. 361) (truthfulness in

1

statements to others); 8.4(c) (2019 Kan. S. Ct. R. 387) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); 8.4(d) (engaging in conduct prejudicial to the administration of justice); and 8.4(g) (engaging in conduct adversely reflecting on lawyer's fitness to practice law).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"7.     Payne & Jones, Chartered, hired the respondent as an associate in August 2011. For the first three years of her employment, the respondent handled the limited action dockets in Johnson County and Wyandotte County, served as the city prosecutor for the City of Mission, Kansas, handled litigation matters, and assisted other members of the firm with insurance defense litigation. In June of 2015, another associate left the firm and the respondent took over that attorney's domestic law practice. At that time, respondent had never worked on any family law matters with the exception of researching particular issues for one of the partners. While trying to learn this new area of the law, respondent was engaged and planning her wedding in 2015 and was of the impression that Payne & Jones was not amenable to her taking time off from work to plan and organize her wedding matters. The respondent took no time off the week of her wedding and had a very short honeymoon and 'was back at [her] desk after that.' The departure of the other associates also meant that the Mission Municipal Court dockets became her responsibility which involved hour long dockets in the morning a few times a week and also at night a few days a week.

"8.     During respondent's employment with Payne & Jones, the respondent was not assigned a supervising attorney. Instead, a litigation partner was 'more or less' assigned to help the respondent. That litigation partner did not have a domestic practice and would not have been able to assist respondent insofar as her domestic practice.

Although the respondent was assigned 'mentors,' meetings with such mentors were routinely cancelled for business reasons. As a result, respondent's meeting with the 'mentors' occurred sporadically.

"9. In the fall of 2017, the respondent notified the firm that she was expecting her first child. Although respondent expected that her practice would wind down a little bit and that she would be able to take fewer cases at that time, that did not happen. Instead, respondent's workload grew rapidly. A partner's unexpected health issue resulted in the transfer of additional files to the respondent. Additionally, both her litigation paralegal and her family law paralegal experienced extended absences due to family issues. During their absences, respondent did not have any dedicated administrative assistance and spent time trying to keep up with the administrative work that was piling up. The respondent struggled to get organized but files were everywhere, papers were everywhere and notes were everywhere. According to the respondent it overwhelmed her to the point that she would 'sit there and stare at it and just be paralyzed.' The respondent came to realize that at this time, she was battling severe depression and anxiety.

"*Representation of V.T. in Eviction Matter*

"10.    In August 2017, V.T. retained the firm to represent her in an eviction matter. The firm assigned the respondent to handle V.T.'s eviction case.

"11.    The respondent told V.T. that she filed a petition for unlawful detainer. The respondent also told V.T. that she appeared in court on the petition for unlawful detainer. The respondent's statements to her client were false.

"12.    The respondent's billing records for a different client establish that the respondent participated in a mediation the day that the respondent indicated that she appeared in court on the petition for unlawful detainer.

"13.    In February 2018, toward the end of the respondent's pregnancy, V.T. contacted the firm, expressed her displeasure with the respondent's delay on her case, and

3

informed the firm that she would be hiring a different attorney to handle the eviction matter.

"14.    Members of the firm reviewed the respondent's file regarding her representation of V.T. In the file was a petition for unlawful detainer which purported to have been filed in Jackson County, Missouri. The case number on the petition did not match the court records. To make it appear as though it had been filed, the respondent cut and pasted a filed-stamp from a different case onto the petition for unlawful detainer.

"15.    Members of the firm's management confronted the respondent regarding her representation of V.T. The respondent admitted that she did not file the petition for unlawful detainer, did not appear in court on behalf of V.T., and cut a filed-stamp from another pleading and pasted it on the petition for unlawful detainer. The firm's management asked the respondent if there were other matters that she was handling that had similar problems. The respondent told the firm's management that the V.T. case was the 'worst one.' After members of the firm investigated V.T.'s complaint against the respondent, they reviewed all of the respondent's files. Members of the firm spent many hour reviewing the respondent's work, completing work undertaken by the respondent, and correcting the respondent's misconduct. In some of the cases, the firm did not collect fees and in one case, the firm paid a client $3,000.

"*Representation of B.R.D. in Garnishment*

"16.    In 2012, the firm assigned the respondent to provide representation to a corporate client, B.R.D. in a garnishment matter.

"17.    The respondent informed her client and her supervising attorney that judgment had been entered in favor of her client and against the garnishee for failure to respond to the garnishment. The respondent's statements were false.

"18.    The respondent provided her supervising attorney with a judgment which purported to have been filed by the court on April 14, 2015. However, the court never

4

entered judgment in that case. The respondent falsified the judge's signature and court's filed-stamp on the judgment.

"*Representation of B.H. in Post-Divorce Matter*

"19.    In 2015, the respondent was assigned by the firm to represent B.H. in a post-divorce matter. On October 19, 2015, the respondent entered her appearance on behalf of B.H. According to the court file, the entry of appearance was the last action taken by the respondent.

"20.    The respondent's file included filed-stamped interrogatories to garnishee. The respondent cut and pasted the filed-stamp onto the interrogatories to garnishee as the interrogatories to garnishee were never filed.

"21.    The respondent's file also included a garnishment application and order, which purported to have been issued by the court clerk on October 26, 2015, and returned on November 25, 2015. The respondent cut and pasted the clerk's signature from a garnishment application and order in another case.

"22.    During the period the respondent represented B.H., she told her supervising attorney that she made multiple court appearances on behalf of B.H. in the post-divorce matter. The respondent's statements to her supervising attorney were false.

"*Other Cases*

"23.    In addition to the three cases detailed above, in 15 other cases, the respondent engaged in misconduct. In those same cases, the respondent made misrepresentations to clients and supervisors, she failed to adequately communicate with her clients, and she failed to timely complete tasks. Specifically:

    a.    The respondent told F.B., a client, that she filed a name-change case when she had not filed the case. The respondent told F.B. that the delay in completing the case was caused by the court.

5

b.     The respondent advised H.C., a client, on multiple occasions that a case had been filed on behalf of H.C. when the case had not been filed.

c.     The respondent failed to respond to J.G.'s requests for information.

d.     The respondent failed to perform work for J&D, a business client, but informed J&D that the matter was moving forward.

e.     The respondent failed to timely respond to email messages sent by and telephone calls from her client, P.J.

f.     The respondent informed her client, A.L., that an expungement case had been filed on behalf of A.L., when the case had not been filed.

g.     The respondent advised her client, D.V., that pleadings were filed in a tenant dispute matter when the pleadings had not been filed. The respondent also advised D.V. of hearing dates when no hearing dates had been scheduled. Finally, the respondent informed D.V. that the opposing party delivered rent checks when the tenant had not done so.

h.     The respondent advised E.N., a client, that suit had been filed and a default judgment had been obtained on her behalf. The respondent, however, never filed suit. Eventually, the respondent's firm paid $3,000 to correct the respondent's misconduct.

i.     The firm was retained by an Arizona law firm to register two foreign judgments. The respondent registered both judgments properly. However, the respondent informed the client that a hearing had been held, when no hearing had been scheduled.

j. The respondent failed to respond to inquiries by L.P., the respondent's client. In that case, the respondent also failed to file pleadings, filed pleadings without the approval of her client, and missed deadlines.

k. The respondent represented A.S. in a domestic case. The respondent failed to adequately communicate the client's responsibilities under the journal entry. Additionally, the respondent failed to provide the client with a copy of an accusation in contempt.

l. The respondent represented Z.S. in a traffic matter. The respondent failed to submit an application for diversion and failed to properly communicate with her client.

m. The respondent represented B.W. During the course of the representation, the respondent failed to diligently pursue a remedy for her client and she failed to properly communicate with him.

n. The respondent represented J.W. in a real estate matter. The respondent failed to diligently represent J.W.

o. The respondent represented A.Z., the mother in a domestic matter. A guardian *ad litem* was appointed for the child. A.Z. requested that the respondent file a motion to modify the order appointing the guardian *ad litem*. The respondent never filed the motion. The respondent also failed to properly communicate with her client.

"*Disciplinary Complaints and Investigation*

"24. On June 18, 2018, Jodde Olsen Lanning filed a complaint against the respondent. Additionally, on June 20, 2018, the respondent self-reported her misconduct. On August 20, 2018, the respondent provided a detailed response to Ms. Lanning's complaint, admitting her misconduct.

7

"25.     The respondent fully cooperated during the disciplinary investigation and readily admitted her misconduct. At the hearing on the formal complaint, the respondent reimbursed the firm the $3,000 paid to E.N.

"*Conclusions of Law*

"26.     The respondent stipulated that she violated KRPC 1.1 (competence), KRPC 1.3 (diligence), KRPC 1.4 (communication), KRPC 4.1(a) (truthfulness in statements to others), KRPC 8.4(c) (conduct involving dishonesty), KRPC 8.4(d) (conduct prejudicial to the administration of justice), and KRPC 8.4(g) (conduct that adversely reflects on the lawyer's fitness to practice law).

"27.     Based on the respondent's stipulation, the findings of fact, and the evidence received in this case, the hearing panel concludes as follows:

"KRPC 1.1

"28.     Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The respondent failed to exercise the thoroughness reasonably necessary in her representation of V.T., B.R.D., B.H., and many other clients. Thus, the hearing panel concludes that the respondent violated KRPC 1.1.

"KRPC 1.3

"29.     Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The respondent failed to diligently and promptly represent V.T., B.R.D., B.H., and many other clients. Because the respondent failed to act with reasonable diligence and promptness in representing her clients, the hearing panel concludes that the respondent violated KRPC 1.3.

8

## "KRPC 1.4

"30.     KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the respondent violated KRPC 1.4(a) when she failed to respond to requests from her clients for information regarding the status of the representation. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(a).

"31.     KRPC 1.4(b) provides that '[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.' The respondent likewise violated KRPC 1.4(b) when she provided V.T., B.R.D., B.H., and many other clients with false information regarding the status of the representations. The hearing panel concludes that the respondent violated KRPC 1.4(b).

## "KRPC 4.1

"32.     KRPC 4.1(a) provides that '[i]n the course of representing a client a lawyer shall not knowingly make a false statement of material fact or law to a third person.' The respondent repeatedly violated KRPC 4.1(a) when she provided false information to many clients as well as her supervising attorneys regarding the status of the representations. The hearing panel concludes that the respondent violated KRPC 4.1(a).

## "KRPC 8.4(c)

"33.     'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The respondent engaged in conduct that involved dishonesty when she cut and pasted filed-stamps, a clerk's signature, and a judge's signature onto draft pleadings and orders. The respondent also engaged in conduct that involved dishonesty when she falsely told her clients and supervising attorneys that action had been taken in the various cases when it had not been. As such, the hearing panel concludes that the respondent violated KRPC 8.4(c).

9

"34.     'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The respondent engaged in conduct that was prejudicial to the administration of justice when she failed to file pleadings on behalf of clients. Because the respondent failed to file pleadings on behalf of her clients, the causes of action were delayed. As such, the hearing panel concludes that the respondent violated KRPC 8.4(d).

"KRPC 8.4(g)

"35.     'It is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.' KRPC 8.4(g). The respondent engaged in conduct that adversely reflects on her fitness to practice law when she cut and pasted filed-stamps, a clerk's signature, and a judge's signature onto draft pleadings and orders. The respondent also engaged in conduct that adversely reflects on her fitness to practice law when she falsely told her clients and supervising attorneys that action had been taken in the various cases when it had not been. The hearing panel concludes that the respondent violated KRPC 8.4(g).

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"36.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"37.     *Duty Violated*. The respondent violated her duty to her clients, the public, and the legal profession to maintain her personal integrity.

10

"38.    *Mental State*. The respondent knowingly violated her duty.

"39.    *Injury*. As a result of the respondent's misconduct, the respondent caused serious potential injury to her clients and actual injury to her law firm.

"Aggravating and Mitigating Factors

"40.    Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

     a.    *Dishonest or Selfish Motive*. There is no dispute that the respondent exercised poor judgment and engaged in dishonest conduct by fabricating court pleadings and orders; cutting and pasting filed-stamps on pleadings and orders; cutting and pasting a clerk's signature and a judge's signature; and communicating dishonest information to her clients and her law firm. However, the evidence also paints a picture of an associate attorney whose poor judgment appears to have been triggered by her overwhelming workload, lack of direct supervision, and her depression. Certainly, evidence that the respondent took on additional files to assist a partner having family issues and handled administrative duties after taking an increased workload reflects selfless conduct.

     Whether respondent's actions were the result of her dishonest motive, is worthy of some discussion. Again, it is clear that various actions taken by the respondent were dishonest. The standard, however, is whether the respondent had a dishonest motive; not whether the results of her action were dishonest. Did she undertake the acts to be dishonest? The evidence reflects that respondent's actions were, at least in part, driven by her workload, depression, and anxiety. There was substantial evidence that during a significant portion of the time, the respondent's workload was overwhelming, that she had very little mentoring, and that sufficient administrative staff was not available to her. Notwithstanding her

11

mental state and the workload, the facts reflect that respondent had a dishonest motive at the time she took various actions including falsifying pleadings, advising that a lawsuit had been filed and judgment entered, and misrepresenting that she was in court when she was not. The hearing panel concludes that although the respondent was suffering from depression and anxiety, the respondent was aware of her conduct which clearly involved dishonesty and that she was motivated by dishonesty.

b.      *A Pattern of Misconduct*. The respondent engaged in similar misconduct in multiple cases. She lacked diligence in representing 14 clients. She failed to adequately communicate with 16 clients. Further, the respondent engaged in dishonest conduct in representing 10 clients. The respondent engaged in patterns of misconduct.

c.      *Multiple Offenses*. The respondent committed multiple rule violations. The respondent violated KRPC 1.1 (competence), KRPC 1.3 (diligence), KRPC 1.4 (communication), KRPC 4.1(a) (truthfulness in statements to others), KRPC 8.4(c) (conduct involving dishonesty), KRPC 8.4(d) (conduct prejudicial to the administration of justice), and KRPC 8.4(g) (conduct that adversely reflects on the lawyer's fitness to practice law). The hearing panel concludes that the respondent committed multiple offenses.

d.      *Vulnerability of Victim*. The respondent engaged in misconduct in representing 18 clients. Many of the respondent's clients were vulnerable to the respondent's misconduct.

"41.      Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

a.      *Absence of a Prior Disciplinary Record*. The respondent has not previously been disciplined.

12

b.      *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct*. The evidence presented at the hearing established that the respondent was overwhelmed and overworked. In 2015 and 2016, after the respondent fell behind on her work, her firm provided her with mentors but such mentoring was sporadic and ended in 2017. With the departure of other associates, the respondent's work load was increased and her areas of practice were expanded. Despite the increase, she was not provided with any additional administrative support or mentoring. In fact, her administrative support took extended leaves of absence during this period of time leaving the respondent to not only handle her lawyer duties but to also cover administrative duties. Because of the overwork, she became overwhelmed. Further, the respondent suffers from depression and anxiety. It is clear that the respondent's depression and anxiety contributed to the misconduct. The respondent sought treatment for her depression and anxiety; and the respondent is in compliance with the treatment plan. Further, the respondent entered into a professional monitoring agreement with KALAP and the respondent is likewise in compliance with the professional monitoring agreement.

c.      *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* The respondent fully cooperated with the disciplinary process. Additionally, the respondent admitted the facts that gave rise to the violations.

d.      *Inexperience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to the practice of law in 2011. At the time the misconduct began, the respondent had been practicing law for only four years. The respondent was inexperienced in the practice of law.

e.      *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney*. The respondent is an active

and productive member of the bar of Johnson County, Kansas. The respondent also enjoys the respect of her peers and generally possesses a good character and reputation as evidenced by several letters received by the hearing panel.

f.     *Remorse*. At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

"42.     In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.42     Suspension is generally appropriate when:

(a)     a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b)     a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

'4.62     Suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client.

'5.11     Disbarment is generally appropriate when:

. . . .

(b)     a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

'5.13     Reprimand is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or

14

misrepresentation and that adversely reflects on the lawyer's fitness to practice law.'

"*Recommendations of the Parties*

"43.    The disciplinary administrator recommended that the respondent's license to practice law be suspended for a period of two years. Finally, the deputy disciplinary administrator recommended that after serving one year of suspension, the respondent be allowed to resume the practice of law under the proposed plan of probation.

"44.    Counsel for the respondent recommended that the respondent be allowed to continue to practice law subject to the terms and conditions contained in the respondent's proposed plan of probation.

"45.    When a respondent requests probation, the hearing panel is required to consider Kan. Sup. Ct. R. 211(g)(3), which provides:

'(3)    The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

(i)    the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least fourteen days prior to the hearing on the Formal Complaint;

(ii)    the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

(iii)    the misconduct can be corrected by probation; and

15

(iv) placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.'

"46. The respondent developed a workable, substantial, and detailed plan of probation. The respondent provided a copy of the proposed plan of probation to the disciplinary administrator more than 14 days prior to the hearing on the formal complaint. The respondent, however, did not provide the proposed plan of probation to each member of the hearing panel more than 14 days prior to the hearing.

"47. The respondent put the proposed plan of probation into effect prior to the hearing on the formal complaint by complying with each of the terms and conditions of the probation plan.

"48. Unfortunately, however, some of the misconduct, in this case, cannot be corrected by probation. Specifically, dishonest conduct cannot be effectively supervised. *See In re Stockwell*, 296 Kan. 860, 868, 295 P.3d 572 (2013) ('Moreover, this court is generally reluctant to grant probation where the misconduct involves fraud or dishonesty because supervision, even the most diligent, often cannot effectively guard against dishonest acts.').

"49. Finally, at this time, placing the respondent on probation is not in the best interests of the legal profession and the citizens of the State of Kansas. Because the respondent engaged in extensive dishonest conduct, a period of suspension is warranted. The hearing panel, however, is persuaded by the significant mitigating evidence presented in this case and concludes that a short suspension followed by a period of probation is appropriate in this case.

"*Recommendation of Hearing Panel*

"50. Based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be suspended for a period of two years. The hearing panel further recommends that after serving six months of the suspension that the respondent be automatically reinstated to

16

the active practice of law and placed on probation for a period of two years, subject to the terms and conditions detailed in the respondent's plan of probation.

"51.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the hearing panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2019 Kan. S. Ct. R. 257). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

The respondent was given adequate notice of the formal complaint to which she filed an answer. The respondent was also given adequate notice of the hearing before the panel and the hearing before this court. She did not file exceptions to the hearing panel's final hearing report. As such, the panel's factual findings are deemed admitted. Supreme Court Rule 212(c), (d) (2019 Kan. S. Ct. R. 261). The evidence also supports the panel's conclusions of law. We, therefore, adopt the panel's findings and conclusions.

The only remaining issue before us is the appropriate discipline for the respondent's violations. At the hearing before this court, the office of the Disciplinary Administrator recommended that the respondent's license to practice law be suspended for a period of two years and that, after one year, the respondent be allowed to petition for reinstatement subject to a reinstatement hearing under Supreme Court Rule 219 (2019

17

Kan. S. Ct. R. 270). The hearing panel recommended that the respondent be suspended from the practice of law for a period of two years and that, after six months, the respondent be automatically reinstated and placed on probation for a period of two years subject to the terms and conditions detailed in respondent's plan of probation. The respondent requested probation subject to the terms and conditions in respondent's plan of probation.

This court is not bound by the recommendations made by the Disciplinary Administrator or the hearing panel. Supreme Court Rule 212(f). But this court agrees that a two-year period of suspension is warranted given the serious nature of the respondent's acts that gave rise to the multiple violations in this matter. While it is clear that respondent has made notable strides in understanding and addressing the personal issues that led to the ethical lapses and serious rule violations resulting in this complaint, we cannot merely adopt a recommendation of probation without first assuring that the respondent has in place a structure in her personal life and professional practice that protects the public from future transgressions. Therefore, in consideration of all the facts and circumstances, the respondent will be eligible to apply for reinstatement under Rule 219 after completing nine months of the two-year suspension. A minority of this court supported a longer period of time before the respondent could seek reinstatement.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Laurel R. Kupka be and she is hereby disciplined by suspension for a term of two years in accordance with Supreme Court Rule 203(a)(2) (2019 Kan. S. Ct. R. 240).

18

IT IS FURTHER ORDERED that following the completion of nine months of suspension, the respondent may petition for an early reinstatement and must undergo a hearing under Rule 219 (2019 Kan. S. Ct. R. 270).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2019 Kan. S. Ct. R. 268) (notice to clients, opposing counsel, and courts of record following suspension).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

BEIER AND WILSON, JJ., not participating.

ANTHONY J. POWELL, J., assigned.[1]

PATRICK D. MCANANY, Senior Judge, assigned.[2]

MICHAEL J. MALONE, District Judge Retired, assigned.[3]

---

[1]**REPORTER'S NOTE:** Judge Powell, of the Kansas Court of Appeals, was appointed to hear case No. 122,053 vice Justice Wilson under the authority vested in the Supreme Court by K.S.A. 2019 Supp. 20-3002(c).

[2]**REPORTER'S NOTE:** Senior Judge McAnany was appointed to hear case No. 122,053 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.

[3]**REPORTER'S NOTE:** Retired District Judge Malone was appointed to hear case No. 122,053 vice Justice Beier under the authority vested in the Supreme Court by K.S.A. 20-2616.