IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 118,310

In the Matter of CURTIS N. HOLMES,
*Petitioner*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed December 2, 2022. Reinstatement.

*Julia A. Hart*, Deputy Disciplinary Administrator, argued the cause.

*Curtis N. Holmes*, petitioner, argued the cause pro se.

PER CURIAM: In May 2018 this court imposed a one-year suspension on Curtis N. Holmes after Holmes continued to practice law despite having been suspended for failure to timely pay his annual registration fee. *In re Holmes*, 307 Kan. 871, 416 P.3d 143 (2018). In May 2019, Holmes petitioned for reinstatement. After a May 2022 hearing before a panel of the Kansas Board for Discipline of Attorneys, the panel issued a final hearing report on June 30, 2022. The hearing panel determined that petitioner had not met his burden of proving the factors in Supreme Court Rule 232(e)(4) (2022 Kan. S. Ct. R. at 295) weighed in favor of reinstatement and recommended that this court deny Holmes' petition for reinstatement.

The hearing panel made the following findings of fact, conclusions of law, and recommendations after the reinstatement hearing and arguments:

1

"2.     On September 26, 2008, the Supreme Court admitted Curtis N. Holmes (hereinafter 'the petitioner') to the practice of law in the State of Kansas, attorney registration number 23434. . . .

"3.     In an original action in discipline, on May 4, 2018, the Supreme Court concluded that the petitioner violated Kansas Rules of Professional Conduct 1.4 (communication), 1.16(a)(1) (withdrawing from representation), KRPC 5.5(a) (unauthorized practice of law); 8.1 (false statement in connection with disciplinary matter), 8.4(c) (misconduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (misconduct prejudicial to the administration of justice), and Supreme Court Rule 218(a) (2018 Kan. S. Ct. R. at 262) (notification of clients upon suspension). The Supreme Court suspended the petitioner's license to practice law for a period of one year and ordered that the petitioner undergo a reinstatement hearing pursuant to Supreme Court Rule 219(d) (2018 Kan. S. Ct. R. 264), now Supreme Court Rule 232 (2022 Kan. S. Ct. R. at 293).

"4.     The Supreme Court based the rule violation findings and suspension on the following facts, as found by the hearing panel:

'10.     Rule 208(a) requires all attorneys to register with the Clerk of the Appellate Courts and pay the annual registration fee prior to July 1 each year. The rule includes a "grace" period, providing attorneys until July 31 of each year to forward the form and pay the annual registration fee without penalty. However, "[a]ttorney registration fees received by the Clerk of the Appellate Courts after July 31 of the year in which due shall be accompanied by a $100 late payment fee." Rule 208(d).

'11.     On July 29, 2015, the respondent mailed his attorney registration form and fee to the Clerk of the Appellate Courts. The Clerk did not receive the respondent's registration form and fee until after July 31, 2015. Under Rule 208(d), the respondent was required to pay a late fee of $100 because the

2

registration form and fee were not received until after July 31, 2015. The respondent failed to provide the late fee of $100.

'12. On August 8, 2015, the respondent received a letter from the Clerk of the Appellate Courts, sent *via* certified mail, informing the respondent that his registration had not been received before August 1, 2015, and that his license to practice law would be suspended if he did not pay the late fee of $100 within 30 days. The respondent did not pay the late fee of $100 within 30 days.

'13. On October 6, 2015, the Supreme Court entered an order suspending the respondent's license to practice law for failing to pay the late fee of $100. On October 8, 2015, the Clerk sent the order of suspension to the respondent by certified mail to the respondent at the respondent's registration address. Prior to the entry of the order of suspension, the respondent was on notice that such an order would follow if the respondent did not pay the late fee.

'14. On October 13, 2015, the United States Postal Service attempted to deliver the certified mailing at 4:32 p.m., leaving a notice.

'15. On October 14, 2015, prior to 10:48 a.m., the respondent called the Clerk of the Appellate Courts and spoke with Debbie Uhl. During the conversation, the respondent stated that he had mailed the registration form and fee in plenty of time to arrive before August 3, 2015, that he had received the notice regarding the late fee, and that he did not believe that he owed the late fee, so he did not send it.

'16. At the hearing on this matter, the witnesses' testimony varied regarding what Ms. Uhl stated during the telephone conversation. Based on all the evidence presented to the hearing panel, the hearing panel concludes that Ms. Uhl informed the respondent that the Supreme Court had suspended the respondent's license to practice law. Ms. Uhl asked the respondent if he had received the order of suspension. The respondent indicated that he had

3

not received the order of suspension. Thus, despite the fact that the respondent had not yet signed for the certified mail, he had actual knowledge that his license was suspended on October 14, 2015.

'17.   After the respondent's license to practice law was suspended, the respondent continued to practice law in multiple cases, as detailed below.

'18.   G.M., E.M., and El.M. rented property from C.W. C.W. asserted that . . . G.M., E.M., and El.M. failed to timely pay their rent. As a result, C.W. filed an eviction suit against G.M., E.M., and El.M. Carol Hall represented C.W. in the eviction action. The respondent represented G.M., E.M., and El.M. in the eviction action.

'19.   Additional difficulties arose between the parties, and C.W. filed a protection from stalking case against G.M., Leavenworth County District Court Case No. 2015-DM-828. G.M. then filed a protection from stalking case against C.W., Leavenworth County District Court Case No. 2015-DM-854. Robert H. Hall, Carol Hall's husband and law partner, represented C.W. in the protection from stalking cases.

'20.   On October 14, 2015, the Honorable Michael D. Gibbens held a hearing in the eviction case at 1:00 p.m. While the respondent was in the courtroom shortly before 1:00 p.m., he left the courtroom and went into the hallway to look for his clients just before the case was called. G.M., E.M., and El.M. arrived and met with the respondent regarding the eviction case.

'21.   The judge called the case. G.M., E.M., and El.M. did not appear. Additionally, the respondent was not in the courtroom when the judge called the case. As a result, the court entered default judgment and a writ for possession of the premises in favor of C.W. The respondent returned to the courtroom and requested that the court set aside the default judgment. The judge told the respondent that he would have to file a written motion to set aside the default judgment and writ.

4

'22. Even though the respondent knew prior to the time of the hearing that his license to practice law had been suspended, the respondent did not inform opposing counsel, the court, or his clients.

'23. The writ for possession of the premises was served on the respondent's clients. The writ directed the respondent's clients to vacate the premises prior to October 20, 2015, at 11:00 a.m. The order provided that the sheriff's office would remove them at that time if they had not vacated the premises.

'24. On October 15, 2015, the day after the respondent had actual knowledge of the suspension, the respondent entered his appearance on behalf of V.S., in Johnson County District Court, case number 15CV6206. The respondent sought and obtained a continuance of a hearing that was set for that day. The respondent failed to inform the court, opposing counsel, or his client that his license to practice law had been suspended.

'25. At the time of the suspension, the respondent represented B.M., a respondent in a domestic case filed in Leavenworth County District Court, case number 2015-DM-356. Lawrence Henderson represented the opposing party. Previously, a status conference had been scheduled for October 15, 2015. The respondent and Mr. Henderson agreed to continue the status conference to October 28, 2015.

'26. On October 17, 2015, at 9:23 a.m., the respondent signed the certified mail receipt for the suspension order. According to the respondent, the respondent wrote a check in the amount of $100 payable to the Clerk of the Appellate Courts. The Clerk of the Appellate Courts did not receive a check from the respondent dated October 17, 2015.

'27. On October 17, 2015, the respondent served a motion to set aside order for immediate possession and a memorandum in support of motion to set aside order for immediate possession in the eviction action filed against G.M., E.M., and El.M. on C.W. On October 19, 2015, the respondent filed those

5

pleadings in court. Later that same day, the respondent sought and obtained an *ex parte* temporary order setting aside the writ of immediate possession. At the time he served and filed the pleadings and sought the *ex parte* order, the respondent did not inform his clients, opposing counsel, or the court that his license had been suspended.

'28.   Prior to the suspension of the respondent's license to practice . . . law, the respondent represented R.G. in a domestic case pending in Leavenworth County District Court, case number 2014-DM-904. Pamela Burton represented the opposing party in that case. On October 17, 2015, the respondent served discovery responses in R.G.'s case on Ms. Burton. The respondent filed pleadings in that case on October 19, 2015. The respondent did not inform his clients, opposing counsel, or the court that his license to practice law had been suspended.

'29.   On October 19, 2015, the respondent met with G.M., E.M., El.M., and a deputy with the Leavenworth County sheriff's office about the October 20, 2015, deadline in the writ. Again, the respondent did not inform his clients that his license to practice law had been suspended.

'30.   Previously, the court scheduled a hearing in the protection from stalking cases for October 19, 2015. Prior to the hearing, Mr. Hall saw the respondent at the courthouse. Later, Mr. Hall memorialized the exchange as follows:

"Carol:

["]This morning at approximately 10:45 am I went through security at the Justice Center on my way to the PFS hearing concerning the [C.W. and G.M.] PFS case. Mr. Holmes was sitting on the bench just east of the security entrance. After I passed through security I went over to Mr. Holmes to see if he was going to represent [G.M.] in the PFS case. He

6

indicated he was going to represent her and had told her to ask for a continuance since he was waiting for a ride from his wife, due to his car having broken down.

"He launched into speaking about the eviction case where you are representing [C.W.]. He said he had filed a motion to set aside the writ that was issued and had already spoken with Judge Gibbons [*sic*] as well as the sheriff's office. I asked him for a copy of the motion that he filed and told him that you had not received it. He said he 'sent it up' and did not have a copy. I handed him a copy of the Order For Immediate Possession that you gave me to give to him. I told him you had tried to fax it, but without success; he said you had to call first, then indicate (I think to his secretary) that you wanted to send a fax, then fax it. He acknowledged having received it by email from you.

"He suggested that the PFS cases should be continued until his client could get moved out. I told him that was a good idea and we agreed on November 16, 2015 for the new date in the PFS cases. I told him I would convey that to Judge Dawson and I did so about 15 minutes later. He indicated that his client had tried to rent another place, but had been declined because on (sic) the pending eviction case. . . . We agreed it would facilitate resolution for his client to get moved out—the sooner, the better—and that, hopefully, we could then resolve the PFS cases by agreement."

'31. When Mr. Hall appeared before Judge Dawson to seek and obtain a new hearing date in the two protection from stalking cases, Mr. Hall referenced the agreement with the respondent. The respondent, however, did not appear in court. The respondent did not inform his clients, Mr. Hall, or the court that the respondent's license had been suspended.

'32. On October 19, 2015, the court entered orders continuing the protection from stalking cases to November. In the orders, the respondent is listed as G.M.'s counsel.

7

'33. During the afternoon hours of October 19, 2015, Ms. Hall emailed the respondent to set a date for a hearing in the eviction action. In the email, Ms. Hall proposed several dates, including October 23, 2015. The respondent called Ms. Hall and agreed to an expedited hearing on October 23, 2015, at 11:00 a.m. The respondent did not tell Ms. Hall that his license was suspended.

'34. At the time his license was suspended to practice law, the respondent represented G.B. in an appeal from a municipal court conviction, Leavenworth County District Court case number 2015-CR-573. Previously, the court had scheduled a trial for October 20, 2015. On October 20, 2015, the respondent sought and obtained opposing counsel's consent and continued the trial to November, 2015. The respondent did not inform opposing counsel, the court, or his client that his license to practice law was suspended.

'35. On October 22, 2015, the respondent wrote a check in the amount of $100 payable to the Clerk of the Appellate Courts. The respondent delivered the check to the Clerk of the Appellate Courts.

'36. On October 22, 2015, the respondent called Ms. Hall and left a message asking Ms. Hall to call him regarding the eviction case. Ms. Hall replied to the message by email that same day asking the respondent to draft an agreement.

'37. On October 23, 2015, the Leavenworth County District Court Administrator informed Judge Michael D. Gibbens that the respondent's license to practice law was suspended. The hearing in the eviction action was scheduled to be heard in Judge Gibbens' court at 11:00 a.m. that day.

8

'38.  Ms. Hall had several hearings before Judge Gibbens on October 23, 2015, prior to the 11:00 a.m. setting. Before the 11:00 a.m. hearing, Judge Gibbens informed Ms. Hall the respondent's license to practice law was suspended.

'39.  The respondent arrived for the hearing shortly before 11:00 a.m. and entered the courtroom. The respondent approached Ms. Hall and asked her to come to speak with him in the hallway. In the hallway, the respondent told Ms. Hall that his license to practice law was suspended. The respondent told Ms. Hall that he had just learned of the suspension a day or so prior and was reluctant to leave a phone message to that effect. The respondent asked Ms. Hall to cancel the 11:00 a.m. hearing and to agree to allow his clients until the following Monday to vacate the premises. The respondent's clients were not present.

'40.  Ms. Hall informed her client of the respondent's offer. Her client declined the offer. Shortly after 11:00 a.m., on October 23, 2015, Judge Gibbens entered the courtroom. The respondent was in front of the bar at counsel table when the following exchange occurred:

"JUDGE GIBBENS:  Be seated. All right, Mr. Holmes, before I call this case, the Court's been advised that you were administratively suspended from the practice of law effective October the 6th.

"MR. HOLMES:  Right. I became aware of that in the last few days.

"JUDGE GIBBENS:  Okay. Have you been reinstated yet?

"MR. HOLMES:  I've done everything I can. I've actually been advised it's been processed and it should be effective Monday.

"JUDGE GIBBENS:  Okay. Well, you can't appear here today.

"MR. HOLMES: I understand. I've been advised by the Disciplinary Administrator the thing I need to do is to show up and let the Court know that, let opposing counsel know that. I would have let my client know that but I can't get a hold of them and they're not present.

"JUDGE GIBBENS: All right.

"MR. HOLMES: But I will be doing that. And I have discussed the matter with Ms. Hall.

"JUDGE GIBBENS: All right. You may withdraw then. Thank you.

"MR. HOLMES: Thank you."

41. After the respondent left the courtroom, the court entered a default order for immediate possession and issued a writ against the respondent's clients to vacate the premises.

42. Later that day, October 23, 2015, the respondent came to Ms. Hall's office to deliver a client file to Mr. Hall in an unrelated case. Ms. Hall came to the reception desk and took the file from the respondent. The respondent began to discuss the eviction action with Ms. Hall. Because the respondent was not licensed to practice law, Ms. Hall told the respondent that he needed to leave.

43. On October 23, 2015, the respondent sent a letter to the disciplinary administrator, self-reporting his conduct. The respondent's letter provided:

"Please be advised that in the hopes of compliance with the rules of professional conduct, I am providing notice of a handful of matters in which I appeared in Court to represent clients which occurred apparently *after* the entry of an order regarding but *prior* to my notification of an administrative suspension.

"Pursuant to the Supreme Court Rules regarding annual registration, I mailed my Attorney Registration documents and fees on the 29th day of July, 2015. I had anticipated they would be received on or before the 31st day of July, 2015, in time to renew my registration before being deemed late. However, a few weeks later, I received a notice by certified mail that my registration renewal documents were not processed until Monday, August 3rd, 2015, and were therefore deemed late.

"I thereafter attempted to contact the registration office to object and/or to request a further explanation for the late fee. I cannot recall the precise date of the call but believe it was in late August. In any event, I had hoped to avoid having to send the late fee if I could receive a better explanation for the delay and possibly have the determination reversed. I did not receive a follow-up response from the registration office, and admittedly I waited to follow up on the issue until thirty (30) days had lapsed.

"Nevertheless, I again called and poke [*sic*] with the registration clerk about the same issue, I believe on October 14th, and was advised the registration office could provide me no precise explanation for the processing delay but that it was possible the registration renewal documents were either received late, or they had been received on time but were left in the lock box until they could be processed after the weekend of August 1st and 2nd, 2015. I was then informed that I would be contacted by an individual who could better explain or resolve the matter the following day; however, as of this date I have received no such contact.

"Although I was aware that it had been more than thirty (30) days since I had been notified of the late fee issue, I ultimately prepared and mailed the late fee payment with the additional form to the registration office the same day. I had hoped that despite the delay, I might be able to avoid an administrative suspension. In over twenty (20) years of practice, I have never incurred this issue and so I was uncertain as to how the entire process worked.

11

"Unfortunately, I received notice of the suspension a few days later on October 17th, 2015. After reviewing the information, I immediately prepared and sent the reinstatement fee. I also sent the Continuing Legal Education reinstatement fee. I only learned after sending the reinstatement fee, that it had been received by the registration office but that they had not received the late fee I had mailed days earlier. Accordingly, I immediately wrote and delivered another check for the late fee. Accordingly, I have undertaken all action to reinstate my license, which by this time may already be reinstated or, as I have been advised, should be reinstated imminently. However, as of the current date, I still have no knowledge as to whether the late fee sent nearly a week and a half ago was ever received, which further concerns me given the original delay in having the initial renewal fee payment processed.

"In any event, to my knowledge, there are no other impediments to my license other than the late payment fee issue, and the delay was largely occasioned as a result of the fact that I did not believe I [*sic*] payment would be received late in the first place, and my admitted stubbornness over the issue.

"I understand that an administrative suspension order was issued on October 5th or 6th, 2015; however, it was only after I received the notice of suspension that I became aware it had actually been issued. As such, after the order was issued but prior to my notice thereof I admittedly appeared in state court to represent clients on a handful of occasions. The first occasion was October 6th, 2015, in Leavenworth County, . . . The matter concerned a Motion to Determine Child Support Arrearages which I had filed some months earlier. The hearing merely consisted of notification to the Court that the parties had reached a previously negotiated agreement. The second hearing was on October 7 in two related child in need of care cases also in Leavenworth County. My client did not appear, and the matters were essentially continued until the month of November. The third matter was another child in need of care case held in Johnson County on October 8th, 2015, where I merely appeared and indicated my intention to withdraw and

12

was excused by the Court. The fourth hearing . . . was held on October 15th and considered a temporary protection order which had been initially filed on a *Pro Se* basis . . . who asked that I appear on her behalf at the hearing. [She] had also filed a Motion to Modify Custody in a companion domestic case which she also wished me to handle but which was not scheduled at that time. The hearing was continued and the Judge expressed his intention to appoint a Guardian Ad Litem to represent the interests of the children for whom the temporary protection order had been issued. The final hearing involved the sentencing . . . on October 16th, in Olathe Municipal Court. The sentencing was based upon a plea and sentencing agreement which had been negotiated earlier.

"I would not have appeared in any of these hearings had I actually been aware of the administrative suspension, and I have not appeared in any further hearings since [having] been notified of the administrative suspension. In addition, there have been no formal disciplinary proceedings filed in the State of Kansas against me at any time and to my knowledge there are no matters pending.

"Should you have any questions regarding this matter please fee [*sic*] free to contact me."

'44.   The respondent included false information in his October 23, 2015, letter to the disciplinary administrator. *See* ¶ 65.

'45.   On October 26 or 27, 2015, the respondent called Mr. Henderson and asked if he would agree to continue the October 28, 2015, hearing scheduled in G.M.'s case. The respondent explained that he needed the continuance because his daughter was getting married in Idaho on October 28, 2015. The respondent did not disclose that his license to practice law was suspended. However, Mr. Henderson had previously learned that the respondent's license was suspended. Mr. Henderson did not agree to the continuance, because he was concerned that by agreeing to the continuance he would be aiding the respondent in the unauthorized practice of law.

13

'46. On October 27, 2015, Kate Baird, deputy disciplinary administrator, responded to the respondent's letter self-reporting the misconduct. In the letter, Ms. Baird believing that the respondent has not practiced law after learning of the suspension order, told the respondent that she would hold the matter and asked the respondent to provide her with written notification when his license was reinstated.

'47. On October 28, 2015, [the] Supreme Court issued an order reinstating the respondent's license to practice law in Kansas.

'48. On November 6, 2015, the respondent notified the disciplinary administrator that his license had been reinstated. In that letter, the respondent disclosed additional misconduct, as follows:

"Thank you for your letter dated October 27th, 2015. Per your request, I am advising that I received the reinstatement order and was reinstated to practice on October 28th and have resumed practice.

"I should also advise in connection with my prior letter that I had also prepared and filed a few pleadings after the October 6th, 2015, period of suspension. As you may recall, I did not receive any notice thereof until late afternoon of [the] 17th of October.

"In a Johnson County divorce case No. 15-CV-6299 I entered an appearance and submitted an Answer to a Petition and a Motion to Set-Aside Temporary Orders on or about October 14th; however, this was prior to my receipt of the notice of suspension and upon my subsequent notification of the suspension, I appeared in person at a previously scheduled hearing the following week and advised the Court and counsel as well as my client of the suspension. The hearing was then continued for a few weeks.

14

"I also prepared and filed a Motion to Set-Aside [*sic*] a Default Judgment in a Leavenworth County wrongful detainer case No. 2015-LM-952. The Motion was also prepared and signed prior to the time I received my notice, but it was received by the Court Clerk and filed the following Monday and thereafter scheduled by the Court for an expedited hearing to take place on the 23rd of October. Nevertheless, on that date I appeared in Court just prior to the time scheduled for the hearing and notified the Court and Counsel of my administrative suspension. I had been unable to reach my clients prior to that time who, I later learned, were actually in the process of relocating from the residence which was the subject of the action and could not be reached by telephone. Nevertheless, the matter proceeded to a second default after I was excused from the Courtroom by the Court.

"In addition, I received answers from my client by e-mail to a series of discovery requests in Leavenworth Case No. 2014-DM-904. I prepared a formal discovery response which was e-mailed to opposing counsel on October 9th. The discovery answers were later signed by me and verified by my client also prior to my receiving notice of the suspension, but they were deposited in the mail, together with several items of personal mail, the day after I had received notice. I have no excuse for having these items mailed out after I had received notice other than the fact that they had been prepared and included a couple of days earlier together with a large stack of personal mail all of which was sent out at the same time. This was an oversight on my part and was not intentional as it would have been just as easy to have waited to send the discovery answers out until the following week after I received the reinstatement.

"In a criminal case, Leavenworth County Case No. 15-CR-573, a court trial had been scheduled several weeks earlier to take place on the 21st of October. I was unable to contact the Judge to notify him of my administrative suspension; however, with the consent of opposing counsel the matter was continued prior to the day of the trial and rescheduled for [the] 17th day of December.

15

"I submitted no other pleadings of which I am aware, nor did I appear at any other hearings about which I have not previously advised your office. I can say, if there were any such additional matters to speak of, I can represent that none of them were conducted after my receipt of the notice of suspension.

"Should you have any questions regarding this matter, please [feel] free to contact me."

'49.   The respondent's November 6, 2015, letter to the disciplinary administrator's office contained false information. *See* ¶ 66.

'50.   On November 4, 2015, Ms. Hall filed a complaint with the disciplinary administrator regarding the respondent's unauthorized practice of law.

'51.   On November 16, 2015, Ms. Burton filed a complaint with the disciplinary administrator regarding the respondent's unauthorized practice of law.

'52.   On December 3, 2015, the respondent wrote to the disciplinary administrator's office, responding to Ms. Hall's complaint and Ms. Burton's complaint. In the respondent's correspondence to the disciplinary administrator's office, the respondent again made false statements.

'53.   In the respondent's December 3, 2015, letter to the disciplinary administrator's office, the respondent admitted that he violated KRPC 3.3 (by omission), KRPC 3.4(c), and KRPC 5.5.'

"5.   Prior to filing his petition for reinstatement, the petitioner paid the costs of the prior disciplinary proceeding in Kansas, as required by Rule 232.

"6.   On May 7, 2019, the petitioner filed a petition for reinstatement.

16

"7.     On June 4, 2019, the Supreme Court entered an order ruling that sufficient time has elapsed to justify reconsideration of the Supreme Court's prior order of suspension. The Supreme Court ordered the disciplinary administrator to conduct a thorough investigation of the facts alleged in the petition for reinstatement and of the petitioner's conduct since the Court's order of suspension. The Supreme Court ordered the petitioner to appear for a hearing on the petitioner's verified petition for reinstatement; and that the matter proceed pursuant to Rule 219 (now Rule 232).

"8.     On July 31, 2019, the disciplinary administrator's office received a completed reinstatement questionnaire from the petitioner.

"9.     Prior to the reinstatement hearing in this matter, three other complaints alleging misconduct by the petitioner were received by the disciplinary administrator and ultimately were resolved by informal admonition on July 23, 2020, July 24, 2020, and January 8, 2021.

"10.     A hearing on the petition for reinstatement was scheduled for February 14, 2022. During a prehearing conference held in this matter on February 8, 2022, the petitioner requested a ninety (90) day continuance of the reinstatement hearing. The disciplinary administrator, appearing through deputy disciplinary administrator Julia A. Hart, did not object to a continuance of the reinstatement hearing. The request to continue was granted by the hearing panel.

"11.     The reinstatement hearing was rescheduled for May 16, 2022, at the Office of the Disciplinary Administrator, 701 SW Jackson St., First Floor, Topeka, Kansas 66603.

"12.     During the February 8, 2022, prehearing conference, the hearing panel directed the parties to provide a copy of their proposed witness and exhibit lists, along with copies of proposed exhibits, to the other party and to the members of the hearing panel by April 11, 2022.

17

"13.   On April 18, 2022, the hearing panel held a second prehearing conference. During the second prehearing conference the petitioner stated he attempted to email his proposed witness and exhibit lists, along with copies of proposed exhibits, to the hearing panel, Ms. Hart, and the kbda@kscourts.org filing email address using a FedEx scanning service. However, the filing was not received in its entirety from the FedEx scanning service and was not recognizable as a filing intended for this matter. The hearing panel directed the petitioner to file his witness and exhibit lists, along with copies of proposed exhibits, no later than April 21, 2022.

"14.   During the second prehearing conference, the petitioner stipulated to admission of the disciplinary administrator's proposed exhibits A through L. The hearing panel admitted disciplinary administrator's exhibits A through L.

"15.   On May 16, 2022, the matter was called for hearing. The hearing panel appeared. The petitioner appeared *pro se*. The disciplinary administrator's office appeared through Julia A. Hart. All appearances were in person at the Office of the Disciplinary Administrator, 701 SW Jackson St., First Floor, Topeka, Kansas 66603.

"16.   During the hearing, the hearing panel admitted exhibits 1 through 4, offered by the petitioner, into evidence. The hearing panel previously admitted exhibits A through L, offered by the disciplinary administrator, into evidence during the April 18, 2022, prehearing conference.

"17.   Kansas Supreme Court Rule 232 sets forth the procedure applicable to reinstatement proceedings. The hearing panel concludes that the petitioner has complied with the procedural requirements of Rule 232(b) (2022 Kan. S. Ct. R. at 293). The hearing panel now turns its attention to the substantive considerations found at Rule 232(e)(4) (2022 Kan. S. Ct. R. at 293).

"Substantive Considerations

"18.   To establish that he is eligible for reinstatement, '[t]he petitioner has the burden of proof to establish that the petitioner is fit to practice law and that the factors in subsection (e)(4) weigh in favor of reinstatement.' Rule 232(e)(3) (2022 Kan. S. Ct. R. at

18

293). 'Each finding of fact must be established by clear and convincing evidence.' Rule 232(f)(1)(A) (2022 Kan. S. Ct. R. at 293).

"19.   The factors in Rule 232(e)(4) (2022 Kan. S. Ct. R. at 293) are:

'(A)   the petitioner's current moral fitness;

'(B)   the petitioner's consciousness of the wrongful nature of the petitioner's misconduct and the disrepute the misconduct brought the profession;

'(C)   the seriousness of the misconduct leading to disbarment or suspension does not preclude reinstatement;

'(D)   the petitioner's conduct since the Supreme Court imposed discipline;

'(E)   the petitioner's present ability to practice law;

'(F)   the petitioner's compliance with the Supreme Court's orders;

'(G)   the petitioner has not engaged in the unauthorized practice of law;

'(H)   the petitioner has received adequate treatment or rehabilitation for any substance abuse, infirmity, or problem; and

'(I)   the petitioner has resolved or attempted to resolve any other initial complaint, report, or docketed complaint against the petitioner.'

The hearing panel considered the evidence presented regarding each of the factors. Where the hearing panel makes factual findings, those findings of fact are supported by clear and convincing evidence.

"20.   *The Petitioner's Current Moral Fitness*. The petitioner's current moral fitness does not appear to be at issue in this reinstatement matter. The evidence showed the petitioner has a supportive family, engages with his church, and has no criminal

19

history. There was no evidence presented that the petitioner has engaged in conduct since his suspension that would indicate he is morally unfit. The hearing panel concludes that the petitioner's moral fitness is not at issue in this case.

"21. *The Petitioner's Consciousness of the Wrongful Nature of the Petitioner's Misconduct and the Disrepute the Misconduct Brought the Profession*. The petitioner characterized the underlying misconduct that resulted in his suspension as 'mistakes of omission.' Specifically, he testified that he was angry that a late fee was assessed against him and thus neglected to pay the fee. Further, he said that he engaged in willful ignorance by waiting several days to pick up certified mail from the Supreme Court that he suspected might be notice of his administrative suspension. Finally, the petitioner testified that he was not fully forthcoming with the disciplinary administrator's office and the Supreme Court regarding his conduct during disciplinary proceedings. The petitioner's characterization of his misconduct is evidence that . . . he is not conscious of the wrongful nature of his misconduct and the disrepute his misconduct brought the profession. Instead, the petitioner showed that he does not genuinely appreciate the severity of his misconduct and the negative effect it had on the profession, his former clients, the legal system, and the public. Further, the petitioner generally minimized his disciplinary history, including his misconduct that resulted in three separate informal admonitions since his suspension. The petitioner testified during the hearing that one of the informal admonitions he received 'was so minor and it was essentially forgotten.' The hearing panel does not agree that any of the informal admonitions were minor. The hearing panel concludes that the petitioner's evidence does not clearly and convincingly demonstrate that he appreciates the seriousness of his misconduct.

"22. *Whether the Seriousness of the Misconduct Leading to Disbarment or Suspension Does Not Preclude Reinstatement*. The petitioner's conduct that led to his suspension included failing to communicate with and properly withdraw from representation of his clients, engaging in the unauthorized practice of law, and making false statements and misrepresentations during the disciplinary process. This is serious misconduct that had a significant negative impact on his clients, the legal system, the legal profession, and the public. The hearing panel concludes that the petitioner failed to present evidence sufficient to establish that this factor weighs in favor of reinstatement.

20

"23. *The Petitioner's Conduct since the Supreme Court Imposed Discipline*. The petitioner has committed professional misconduct since being suspended from the practice of law. On January 8, 2021, the petitioner received an informal admonition for violations of KRPC 1.2, 1.4, and 5.5. The violation of KRPC 5.5 resulted from the petitioner's communicating with his former client through the client's spouse after his suspension.

"24. *The Petitioner's Present Ability to Practice Law*. The petitioner's ability to practice law does not appear to have been at issue in the underlying disciplinary matter. The petitioner testified that he uses similar problem-solving skills and interacts with clients in his current job as he did when he was an attorney. The petitioner has office furniture, a computer, and his law library in his home, where he said he plans to have an office if he is reinstated. The hearing panel concludes that the petitioner's present ability to practice law is not at issue in this case.

"25. *The Petitioner's Compliance with Supreme Court Orders*. In its May 4, 2018, order suspending the petitioner, the Supreme Court ordered the petitioner to comply with Supreme Court Rule 218 (2018 Kan. S. Ct. R. at 262), now Rule 231 (2022 Kan. S. Ct. R. at 292). Former rule 218(c) provided, '[i]t is the unauthorized practice of law and a violation of KRPC 5.5 for: (1) a suspended or disbarred attorney to practice law after the Supreme Court enters an order suspending or disbarring the attorney . . . .' Current Rule 231(b) provides '[i]t is the unauthorized practice of law and a violation of Kansas Rule of Professional Conduct 5.5 for an attorney to continue to practice law in Kansas after the Supreme Court issues an order suspending or disbarring the attorney.' The petitioner engaged in the unauthorized practice of law during his suspension, which means he did not comply with the Supreme Court's order or the Supreme Court's rules. In addition, in order to be reinstated the petitioner would need to meet the requirements of Supreme Court Rule 812 (2022 Kan. S. Ct. R. at 618) by completing the requisite number of continuing legal education hours to be reinstated. The petitioner testified that so far, he has completed nine continuing legal education hours. The hearing panel concludes that the petitioner did not establish that he has complied with Supreme Court orders since the suspension of his license.

21

"26. *Whether the Petitioner Has Not Engaged in the Unauthorized Practice of Law*. The petitioner has engaged in the unauthorized practice of law since his suspension as evidenced by his January 8, 2021, informal admonition. The petitioner told a former client's spouse that he would represent the client once the petitioner's one-year suspension concluded and he was reinstated. The petitioner gave the client's wife 'an impression that [his] reinstatement would be forthcoming and it would be quick, and that turned out not to be the case.' Further, during the reinstatement hearing the petitioner seemed to not recognize that his conduct that resulted in the January 8, 2021, informal admonition constituted the unauthorized practice of law. *See In re Wilkinson*, 251 Kan. 546, 553, 834 P.2d 1356 (1992) ('[A] suspended or disbarred lawyer may not be present during conferences with clients, talk to clients either directly or on the telephone, sign correspondence to them, or contact them either directly or indirectly.'). In fact, the petitioner testified that he told another former client who reached out to him since his suspension about handling an adoption, 'I'll do what I can but I can't make any promises at this point.' However well-intended, the panel finds it was inappropriate for Mr. Holmes to infer that he might somehow be able to assist his former client when he had no authority to do so. The passage of time, particularly with an adoption, can be damaging to the client's case. The hearing panel concludes that the petitioner engaged in the unauthorized practice of law while his license was suspended.

"27. *Whether the Petitioner has Received Adequate Treatment or Rehabilitation for Any Substance Abuse, Infirmity, or Problem*. Treatment for substance abuse, infirmity, or other problem was not indicated as necessary in the underlying disciplinary matter. This issue was also not addressed during the reinstatement hearing. The hearing panel concludes that this factor is not at issue in this case.

"28. *Whether the Petitioner has Resolved or Attempted to Resolve any Other Initial Complaint, Report, or Docketed Complaint Against the Petitioner*. The disciplinary administrator presented evidence that the petitioner resolved complaints with the disciplinary administrator's office via three separate informal admonitions on July 23, 2020, July 24, 2020, and January 8, 2021. There was no evidence of any unresolved disciplinary complaints against the petitioner. As a result, the hearing panel concludes there is clear and convincing evidence that the petitioner has resolved all other complaints against him as required by this factor.

22

"Recommendation of the Parties

"29.  The petitioner recommended that his petition for reinstatement be granted and that his license to practice law in Kansas be reinstated.

"30.  The disciplinary administrator recommended that the petitioner's petition for reinstatement be denied and that the petitioner's license to practice law in Kansas not be reinstated.

"Recommendation of the Hearing Panel

"31.  Based on the evidence presented in this case, the hearing panel concludes that the petitioner has not met his burden to prove the factors in Rule 232(e)(4) (2022 Kan. S. Ct. R. at 293) weigh in favor of reinstatement. The hearing panel recommends that the Supreme Court deny the petitioner's petition for reinstatement."

After the hearing panel issued its report, we ordered oral arguments in this matter under Rule 232(g)(4)(D) (2022 Kan. S. Ct. R. at 296).

DISCUSSION

In a disciplinary proceeding, this court generally considers the evidence, the disciplinary panel's findings, and the parties' arguments to determine whether KRPC violations exist and, if they do, the appropriate discipline to impose. Attorney misconduct must be established by clear and convincing evidence. *In re Spiegel*, 315 Kan. 143, 147, 504 P.3d 1057 (2022); see Supreme Court Rule 226(a)(1)(A) (2022 Kan. S. Ct. R. at 281). Clear and convincing evidence is evidence that causes the fact-finder to believe that the truth of the facts asserted is highly probable. *In re Murphy*, 312 Kan. 203, 218, 473

23

P.3d 886 (2020). We do not reweigh evidence or make credibility determinations; however, we are not bound by the Disciplinary Administrator's or the hearing panel's recommendations. *In re Kupka*, 311 Kan. 193, 204, 458 P.3d 242 (2020).

The Office of the Disciplinary Administrator asserted at oral argument that because Holmes did not file exceptions to the Reinstatement Final Hearing Report, the findings of fact and conclusions of law are deemed admitted. This would of course be true under a typical disciplinary proceeding under Supreme Court Rule 228(g)(1) (2022 Kan. S. Ct. R. at 288) (findings of fact and conclusions of law in the final hearing report will be deemed admitted if respondent fails to timely file an exception). However, Rule 232 (2022 Kan. S. Ct. R. at 293) governing reinstatement procedure does not include similar language. Rather, Rule 232(g)(4) simply provides that if the hearing panel recommends denying the petition for reinstatement, the petitioner may file exceptions. Because Rule 232 does not deem the findings of fact and conclusions of law admitted if the petitioner does not file exceptions, we disagree with the Office of the Disciplinary Administrator that Holmes admitted to the hearing panel's findings of fact and conclusions of law by not filing exceptions.

The panel heavily relied on the facts that gave rise to the January 8, 2021, informal admonition in recommending against reinstatement. Holmes explained that his former client's wife had communicated to him that his former client was set to be released from prison in a few months, and asked if Holmes could represent him at that time. Holmes indicated to her that he believed his one-year suspension would be complete by the time his former client was expected to be released from prison, and he told her that assuming he was indeed reinstated at that time, he "would be happy to represent him and finish that case." Based solely on these facts, the panel concluded that Holmes engaged in the unauthorized practice of law in violation of KRPC 5.5 (2021 Kan. S. Ct. R. 406) when he made these communications during his suspension.

24

KRCP 5.5(b) (2021 Kan. S. Ct. R. 406) provides that an attorney "who is not admitted to practice in this jurisdiction shall not . . . establish an office or other systematic and continuous presence in this jurisdiction for the practice of law" or "hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction."

This court "has the inherent power to define and regulate the practice of law" in Kansas. *In re Flack*, 272 Kan. 465, 473-74, 33 P.3d 1281 (2001). We have previously considered the parameters of what constitutes the "practice of law," even though "'no precise, all-encompassing definition is advisable,'" and each case "'asserting the unauthorized practice of law must be considered on its own facts on a case-by-case basis.'" *In re Miller*, 290 Kan. 1075, 1080, 238 P.3d 227 (2010). Generally speaking, the practice of law includes performing services in court, in any matter, and at any stage. But in a larger sense it includes legal advice and counsel, and the preparation of legal documents, even if those matters do not occur within a court setting. 290 Kan. at 1080 (citing *State, ex rel., v. Perkins*, 138 Kan. 899, 907, 908, 28 P.2d 765 [1934]). A suspended attorney also would be considered engaged in the practice of law if he or she conferred with clients, advised them of their legal rights, or rendered services requiring knowledge and application of legal principles and techniques. *Miller*, 290 Kan. at 1080-81.

While a suspended attorney is permitted to work in the legal field, his or her functions must be "'limited exclusively to work of a preparatory nature under the supervision of a licensed attorney-employer and [can] not involve client contact.'" *In re Wiles*, 289 Kan. 201, 206-07, 210 P.3d 613 (2009). We have emphasized that in this context, "'[*a*]*ny contact with a client is prohibited*.'" 289 Kan. at 206-07. A non-exhaustive list of restrictions includes prohibitions on a suspended lawyer being present during client conferences, speaking with clients in person or on the phone, signing correspondence to them, or contacting them either directly or indirectly. 289 Kan.

at 206-07. The purpose of this rule is to "avoid the appearance of impropriety, to avoid confusion among laypersons, or to avoid the temptation for law-trained clerks (or paralegals) to go beyond mere preparatory work." *In re Rost*, 289 Kan. 290, 309, 211 P.3d 145 (2009).

The hearing panel cites only *In re Wilkinson*, 251 Kan. 546, 834 P.2d 1356 (1992), in support of its finding that Holmes engaged in the unauthorized practice of law. In that case, Wilkinson had obtained employment as a law clerk under the authority of a licensed attorney during his indefinite suspension. The hearing panel recommended Wilkinson be disbarred after concluding that he engaged in the unauthorized practice of law by working in that capacity. We agreed that in this context, "a suspended or disbarred lawyer may not be present during conferences with clients, talk to clients either directly or on the telephone, sign correspondence to them, or contact them either directly or indirectly." 251 Kan. at 553. But we disagreed with the hearing panel's conclusion that in this context Wilkinson engaged in the unauthorized practice of law. At all times Wilkinson worked under the direction or supervision of a licensed attorney and did not act on his own; "he did not draft any of the documents, did not appear in court, and never offered advice or suggestions to" clients. 251 Kan. at 554. Furthermore, "he did not present himself as an attorney—he disclosed the fact that he was suspended from the practice of law to" clients, and the clients did not pay Wilkinson. 251 Kan. at 554. In light of these facts, we found that the panel did not establish misconduct by clear and convincing evidence, and we dismissed the complaint against Wilkinson. 251 Kan. at 554-55, 558.

Today we hold that a suspended attorney has not engaged in the unauthorized practice of law when the attorney merely indicates future representation is possible upon reinstatement and does not otherwise engage in any counseling, advising, or rendering services requiring legal knowledge while suspended. See 251 Kan. at 554 (finding a suspended attorney was not engaged in the practice of law while working as a law clerk because "he did not draft any of the documents, did not appear in court, and never offered

advice or suggestions to" clients); *State, ex rel., v. Hill*, 223 Kan. 425, 425-27, 573 P.2d 1078 (1978) (a non-lawyer who had a franchise agreement to buy and resell kits that contained forms for obtaining a divorce in Kansas, completed sample forms, and written and audio instructions was not engaged in the practice of law because he did not personally provide legal advice, never represented himself to be an attorney, and advised at least some customers that he was not an attorney).

Holmes did not apply any law to the facts of his former client's case. He did not render services requiring his professional judgment, nor did he apply any part of his legal education to the specific legal problem of his client. The client knew that Holmes was suspended and not currently licensed to practice law. In fact, the client's wife approached Holmes because the client previously had *positive* experiences with Holmes' representation. Holmes merely indicated that upon his reinstatement—which he hoped would be imminent—he would readily return to representing his former client.

Holmes did not make any promises regarding future representation nor did he induce that client to rely on him for legal services during his suspension. We are unaware of any injury that the client suffered from Holmes' statements. We decline to extend the definition of the "unauthorized practice of law" to fit Holmes' conduct relevant to the January 8, 2021, informal admonition.

The panel ultimately recommended that the court deny Holmes' petition for reinstatement because he failed to meet his burden of proving the factors in Supreme Court Rule 232(e)(4) (2022 Kan. S. Ct. R. at 295) weighed in favor of reinstatement. Yet many of the reasons the panel provided for why it found these factors to weigh against reinstatement related to the conduct that gave rise to the January 8, 2021, informal admonition. As we have described, we find that Holmes' statements to his former client do not constitute the unauthorized practice of law in Kansas. We therefore find that, in

light of the entire record, Holmes has met his burden of proving reinstatement is appropriate after our due consideration of the factors presented in Supreme Court Rule 232(e)(4).

CONCLUSION

IT IS THEREFORE ORDERED that Holmes pay all required reinstatement and registration fees to the Office of Judicial Administration (OJA) and to complete all continuing legal education requirements. See Supreme Court Rule 812 (2022 Kan. S. Ct. R. at 618), as amended effective July 1, 2022 (outlining CLE requirements following reinstatement). Upon completion of these requirements Curtis Holmes is reinstated to the practice of law in the state of Kansas. The court directs that once OJA receives proof of Holmes' completion of these conditions, it add Holmes' name to the roster of attorneys actively engaged in the practice of law in Kansas.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to petitioner and that this opinion be published in the official Kansas Reports.